[No. D020212. Fourth Dist., Div. One. June 25, 1996.]

CITY OF SAN MARCOS et al., Plaintiffs and Respondents, v.
COAST WASTE MANAGEMENT, INC., Defendant and Appellant.

322

## Counsel

White & Bright, Leigh A. Rayner and Jennifer M. McGauley for Defendant and Appellant.

Higgs, Fletcher & Mack, John Morris, Sullivan, Hill, Lewin & Markham, Donald G. Rez and Arthur C. Leahy for Plaintiffs and Respondents.

## Opinion

**McDONALD, J.**—Coast Waste Management, Inc., doing business as Liberty Recycling (Coast), appeals an order granting the motion by the City of San Marcos (City) and Mashburn Waste & Recycling Services, Inc., doing business as Mashburn Sanitation Company (Mashburn), for a preliminary injunction enjoining Coast from collecting recyclable solid wastes for a fee from individuals and businesses within the limits of City. Coast contends the exclusive franchise that City granted to Mashburn for collection of solid wastes and the California Integrated Waste Management Act of 1989 (Pub. Resources Code,[1] § 40000 et seq., hereafter the Act) do not preclude it from conducting its recycling operations and undercutting the prices charged by Mashburn for collection of recyclable solid wastes. Coast further contends the order is unenforceable because the order is vague and ambiguous and because Coast was not given an opportunity to comment on the language of the written order. We disagree with Coast's contentions and affirm the order.

---

[1]All statutory references are to the Public Resources Code unless otherwise specified.

## Factual and Procedural Background

In 1988 City entered into an agreement with Mashburn pursuant to which City granted Mashburn the exclusive right and franchise to collect garbage, rubbish and other refuse materials within City limits. A City ordinance generally prohibits collection by persons other than the exclusive franchisee (e.g., Mashburn) of refuse within City limits. In late 1991 or early 1992, Coast began to collect recyclable materials from businesses located in City. Some of Coast's customers were paid by Coast for the right to pick up recyclables, while other customers were charged a fee which was less than they otherwise would customarily be charged for refuse pickup.

On or about July 8, 1993, City and Mashburn filed a complaint against Coast alleging unfair competition, intentional interference with economic relations and intentional interference with prospective economic advantage, and seeking damages, a temporary restraining order, a preliminary injunction and a permanent injunction. On or about July 9, 1993, City and Mashburn moved ex parte for a temporary restraining order restraining Coast from:

"(a) soliciting and/or entering into any contracts with individuals or entities within the corporate limits of the City of San Marcos for the collection or removal or disposal of solid wastes including without limitation paper, cardboard or any other recyclable waste; and

"(b) the collection of any solid wastes including without limitation paper, cardboard or any other recyclable waste from any individual or entity within the City of San Marcos[.]"

On July 9, 1993, the court granted the motion for a temporary restraining order and set a hearing for July 23, 1993, to hear the motion by City and Mashburn for a preliminary injunction. On July 27, 1993, the court granted the motion for a preliminary injunction, with its minute order stating in part: ". . . [Coast] is properly enjoined from conducting its recyclable collection business within San Marcos city limits. The TRO issued July 9, 1993 shall remain in effect as a preliminary injunction pending trial of this action on the merits." City and Mashburn chose not to submit a proposed form of formal written order for the court's consideration. Coast appealed the minute order granting the preliminary injunction, but we dismissed that appeal concluding that the minute order did not "contain a detailed formulation of the acts restrained sufficient either for purposes of making the purported injunction operational and enforceable or for treatment as an appealable order." (*Coast Waste Management, Inc.* v. *City of San Marcos* (Sept. 29, 1993) D019641 [nonpub. opn.].) Following our dismissal of that appeal, City and Mashburn applied ex parte to the court seeking a formal written order setting forth

the specific terms of the preliminary injunction. After briefing by all parties and a hearing, the court issued the following formal written order dated November 23, 1993, granting the motion for a preliminary injunction:

"The Court finds that 'solid waste handling services' include[] recycling activities pursuant to [section] 40057, and that [City] is authorized to exclusively license and/or contract with [Mashburn] to provide solid waste handling services pursuant to [section] 40059. The Court further finds that Paragraph 4 of the agreement between Plaintiffs lodged as Plaintiffs' Exhibit 'B' grants [Mashburn] the exclusive right to provide solid waste handling services in the [City].

"Accordingly, [Coast] is properly enjoined from (1) soliciting or entering into any contracts with individuals or entities located within the limits of the [City] for the collection, removal, or disposal of solid wastes (including, without limitation, paper, cardboard, or any other recyclable solid waste) *for a fee*; and (2) the collection *for a fee* of any recyclable solid wastes[] (including, without limitation, paper, cardboard, or any other recyclable waste) from the residence of any individual or place of business of any commercial enterprise within the limits of the [City]." (Italics added.)

Coast now appeals this order.[2]

DISCUSSION

I

*The California Supreme Court Has Interpreted the Act as Allowing Exclusive Agreements Precluding Others From Collecting Recyclable Solid Wastes*

■ Coast contends its challenged activities consist only of collecting "undiscarded" recyclable materials, and thus its activities are not precluded by the Act or the exclusive franchise agreement. However, Coast's use of the term "undiscarded" seems misplaced considering the California Supreme Court's definition of the term "discarded" in *Waste Management of the Desert, Inc.* v. *Palm Springs Recycling Center, Inc.* (1994) 7 Cal.4th 478 [28 Cal.Rptr.2d 461, 869 P.2d 440] *(Palm Springs)*.

In *Palm Springs*, the court held that the Act allows exclusive franchises to be granted only for "solid *waste* handling" which includes the collection of

---

[2]An order granting a preliminary injunction is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(6).

recyclables "discarded" by their owner. (*Palm Springs, supra*, 7 Cal.4th at pp. 481-482, original italics.) The court reasoned that section 40191, subdivision (a) of the Act defined "solid waste" as " 'all putrescible and nonputrescible solid, semisolid, and liquid wastes, including garbage, trash, refuse, paper, rubbish, ashes, industrial wastes, demolition and construction wastes . . . and other *discarded* solid and semisolid wastes[]' " which the court observed did not connote the idea of valuable materials. (7 Cal.4th at p. 485, italics added.) The court noted "waste" is something that is "discarded 'as worthless or useless.' [Citation.]" (*Ibid.*) The court distinguished "waste" which is "discarded" from valuable material which is sold for compensation, stating: "If the owner sells his property—that is, receives value for it—the property cannot be said to be worthless or useless in an economic sense and is thus not waste from the owner's perspective. Conversely, if the owner voluntarily disposes of the property without receiving compensation or other consideration in exchange—that is, throws it away—the obvious conclusion is that the property has no economic value to the owner. The concept of value is in this sense related to the manner in which the property is disposed of." (*Ibid.*) The court concluded that the Act effectively defines "solid waste" as materials that are "discarded." (*Id.* at pp. 485-486.) In contrast, "[p]roperty that is sold for value—for example, a recyclable—is not 'discarded' under any traditional understanding of the term." (*Id.* at p. 486.) Explaining this distinction, the court stated: "A homeowner, for example, can dispose of used furniture, clothing, or automobiles by discarding them or by selling them, but either method of disposition necessarily precludes the other. If he sells the property, he cannot discard it; and if he discards it, he cannot sell it. That 'discard' connotes throwing away or abandoning has been well recognized in cases dealing with waste and related issues. [Citations.]" (*Ibid.*) Applying this distinction between "selling" and "discarding," the court pronounced the following rule for determining whether something is "waste": "The proper rule is this: If the owner of property disposes of it for compensation—in common parlance, sells it—it is not waste because it has not been discarded. The owner is not required under the Act to transfer this property to the exclusive franchisee. But, consistent with the purpose of the Act, an owner cannot *discard* property as he sees fit. Discarding the property renders the property waste and subjects it to the Act." (*Id.* at p. 488, original italics.)

Here the written order dated November 23, 1993, sets forth the preliminary injunction in terms that are defined in the Act and in 1994 were thoroughly discussed in *Palm Springs*. As quoted above, the order applies only to Coast's activities in dealing with "solid wastes." Coast is enjoined from "soliciting or entering into any contracts . . . for the collection . . . of

solid wastes" or "the collection" of solid wastes, including any recyclable solid wastes, *"for a fee."* (Italics added.) Thus, in accordance with the provisions of the Act and the court's analysis in *Palm Springs*, any "recyclable solid wastes" that are collected "for a fee" paid by a customer would necessarily be deemed to be "discarded." The California Supreme Court envisioned this conclusion when it presented the following example expressing its distinction between "selling" and "discarding": "Assume that, as in this case, there is an exclusive franchise. A property owner throws his recyclables into the receptacle provided by the franchisee and does so without receiving compensation. He has plainly discarded his property, and it is thus waste under the Act. Could he instead throw the property into the bin of a competing waste hauler without receiving compensation? No, because by disposing of the property without receiving compensation, he has discarded the property and thereby rendered it waste that is subject to the exclusive franchise. If, however, he is paid for the material by the franchisee's competitor, the owner has sold the property and thus has not discarded it, so it has not become waste." (*Palm Springs, supra,* 7 Cal.4th at p. 486.) We must apply the same standard here. If a customer pays Coast to collect its recyclables, that customer has effectively "discarded" its recyclables by disposing of them without receiving compensation and, thus, those recyclables must be considered "waste" pursuant to the Act. As the court noted in *Palm Springs,* section 40191, subdivision (a) effectively defines "solid waste" as all "discarded" solid, semisolid and liquid wastes. (*Palm Springs, supra,* 7 Cal.4th at p. 485.) Although Coast concedes that City is authorized by section 40059 to enter into exclusive franchise agreements for solid waste handling, it contends that this statutory authority does not extend to "collection of valuable, undiscarded, recyclable materials." While Coast correctly asserts that the Act, as interpreted by the court in *Palm Springs,* does not allow exclusive franchises for collection of "undiscarded" materials, that statement of law has no relevance to the case at hand. When Coast's customers pay fees to Coast for collection of their recyclables, those recyclables are clearly "discarded," not "undiscarded," and considered "solid waste" according to the court's analysis in *Palm Springs.* Coast's attempt to classify its activities as the collection of "undiscarded" recyclables is directly contrary to the Supreme Court's analysis in *Palm Springs.* The *Palm Springs* opinion cannot be applied to the facts and order here in the manner in which Coast suggests. Because the preliminary injunction applies only to "solid wastes" collected "for a fee," there can be no question that it validly prohibits Coast's collection activities with respect to "discarded" recyclables or other solid waste. We note, however, that to the extent Coast pays compensation for collecting customer's recyclables, this collection is not

prohibited either by the preliminary injunction here or by the analysis set forth in *Palm Springs*.[3]

## II

### *The Order Is Not Vague and Ambiguous*

■ Coast contends the order dated November 23, 1993, is unenforceable because it is impermissibly vague and ambiguous. We disagree.

Coast asserts the term "solid waste" as used in the preliminary injunction is ambiguous because that term was not defined in the order. Both the Act and the *Palm Springs* opinion provide detailed, objective definitions of the term "solid waste" to which the parties and the court may refer if there is any question about the meaning of that term. No express definition of the term "solid waste" was required to be set forth in the order.

Coast also asserts it was not given an opportunity to comment on the language of the order dated November 23, 1993, before it was issued by the court. The record shows otherwise. Following our dismissal of Coast's appeal of the minute order dated July 27, 1993, City and Mashburn submitted to the court a proposed form of written order that included the added qualification "for a fee," which we assume arguendo was not expressly contained in the complaint or any previous request for relief.[4] As indicated in a letter dated October 4, 1993, from Coast's counsel to City's counsel, Coast received a copy of this proposed form of written order and vigorously opposed the right of City and Mashburn to submit it to the court subsequent

---

[3]At oral argument Coast contended that its customers receive "cost avoidance" compensation from Coast for Coast's collection of recyclable materials. By "cost avoidance" Coast means that it charges less for trash collection than does Mashburn; to the extent of the lower fee, the client has received compensation or consideration. "Cost reduction" is perhaps a more accurate description than "cost avoidance" for the consideration argument made by Coast. In any event, the argument is contrary to the analysis of the California Supreme Court in *Palm Springs*. Although the customers of Coast pay less to Coast than they would to Mashburn, they nevertheless still pay a fee and therefore they have discarded the material.

[4]We note that as "waste" is defined in *Palm Springs* it was unnecessary to include the term "for a fee" in the preliminary injunction from which the appeal has been taken in this case. Because "waste" is "discarded" material and "discarded" material is material for which no compensation or other consideration is received, the "for a fee" provision in the preliminary injunction, although correct, is unnecessary. It should further be noted that "[n]othing . . . in the language or legislative history of the Act suggests the Legislature intended to eliminate gifts to charity or gifts between friends. As with items that are sold, gifts cannot be fairly said to have entered the solid waste stream. Moreover, a gift of valuable property, like a sale of such property, is a transfer of value and thus cannot properly be characterized as 'discarding' under the Act." (*Palm Springs, supra*, 7 Cal.4th at p. 489.)

to their reliance on the original minute order. Yet, in Coast's extensive briefing arguing City and Mashburn had no right to submit a proposed written order for the court's consideration to correct the deficiency in the original minute order, Coast does not argue that the language of the proposed form of written order did not comply with the court's original minute order or was otherwise improper. Further, following the court's hearing regarding the proposed written order, the court issued a minute order allowing the parties to submit supplemental briefing with the proviso that "thereafter this matter stands submitted by the Court." Coast submitted a supplemental brief, but once again it did not object to the language of the proposed written order. By repeatedly failing to object to the language of the proposed written order, Coast effectively waived any objection to it (other than whether City and Mashburn had any right to submit a proposed written order, whatever its language). The court was not bound by its previous indication that Coast might be given an opportunity to comment later on what the order should be, especially because of its order stating the matter would be submitted following supplemental briefing. Coast simply failed to state a timely objection to the language of the proposed written order. Accordingly, we decline to condone Coast's belated objection and conclude Coast cannot contend on appeal that the language of the order adopted and issued by the court did not correctly reflect its original ruling. In any event, we conclude, as City and Mashburn argue, that the charging of fees by Coast for collection of recyclables was not first raised in the proposed order, but rather was expressly discussed in the pleadings and presumably considered throughout the proceedings. Coast fails to show that the court had no authority to issue the written order or that it abused its discretion in so doing. We further note the court possesses the inherent power to modify its preliminary injunction which is of a continuing or executory nature. (See, e.g., *Sontag Chain Stores Co.* v. *Superior Court* (1941) 18 Cal.2d 92, 94-95 [113 P.2d 689]; *New Tech Developments* v. *Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065, 1071-1072 [236 Cal.Rptr. 746]; 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 322, pp. 272-273.)

### DISPOSITION

The order is affirmed.

Huffman, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 2, 1996.