[No. G042365. Fourth Dist., Div. Three. July 29, 2010.]

In re the Marriage of STACEY and HENRY T. NICHOLAS.
STACEY NICHOLAS et al., Respondent, v.
HENRY T. NICHOLAS, Appellant;
LOS ANGELES TIMES COMMUNICATIONS LLC, Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IIB.

**COUNSEL**

Rutan & Tucker, Richard K. Howell, Steven J. Goon and Gerard M. Mooney for Appellant.

No appearance for Respondent Stacey Nicholas.

Davis Wright Tremaine, Kelli L. Sager, Alonzo Wickers IV and Robyn Aronson for Respondent Los Angeles Times Communications LLC.

**OPINION**

**ARONSON, J.**—Consistent with First Amendment principles, California has a long-standing tradition of open civil proceedings. This applies with equal force to family law cases, although trial courts may redact or seal particular documents to protect private information concerning an overriding privacy interest, including matters pertaining to the custody and visitation of minor children. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20

Cal.4th 1178 [86 Cal.Rptr.2d 778, 980 P.2d 337] (*NBC Subsidiary*); *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045 [37 Cal.Rptr.3d 805] (*Burkle*).)

The trial judge initially assigned to the family law case now before us issued several different orders sealing the court record and establishing a procedure blocking public access. Later, a newly assigned trial judge issued a revised sealing order to provide a procedure for public access in compliance with the *NBC Subsidiary* and *Burkle* decisions, as implemented by California Rules of Court, rules 2.550 and 2.551.

Appellant Henry T. Nicholas (Nicholas) contends the family law court lacked jurisdiction to issue the revised sealing order because it was bound by the initial family law judge's ruling, which he deems binding and unalterable by a successor trial judge. We do not find the contention persuasive.

We reject Nicholas's efforts to transform one of the initial trial judge's prior sealing orders into a juridical black hole from which no light can ever escape. Sealing orders, by their nature, turn on particular circumstances, which may change or evolve over time. Erecting a jurisdictional barrier would effectively prevent the court from exercising custody and control over its own files. We therefore follow well-established constitutional, case, and statutory authority subjecting sealing orders to continuing review and modification by the trial judge who sits in the same judicial proceeding.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Sealing Orders*

Nicholas is involved in a "highly contested" marital dissolution proceeding with his spouse Stacey Nicholas, who filed the petition in 2002. The couple has three minor children. Nicholas cofounded Broadcom Corporation, which he describes as a "successful and well-known high-technology company." Both the underlying action and a separate federal criminal indictment for securities fraud and narcotics crimes have drawn, in his words, "intense media scrutiny and interest . . . ." (See *U.S. v. Nicholas* (C.D.Cal. 2008) 594 F.Supp.2d 1116.)

The Nicholas divorce case initially was assigned to Judge Nancy Pollard. In January 2003, Judge Pollard filed the first sealing order in this case, based upon the parties' stipulation, which provided that " '[a]ny document filed with the Court that contains any Confidential Information . . . shall be filed

under seal and labeled as set forth . . . .' " The order defined " 'Confidential information' " to include information relating to family investments, holdings, and matters pertaining to " 'family life, private life, personal characteristics, lifestyle, proclivities, customs, conduct, fitness, habits, sexual or other behavior, health and any other personal information. . . .' "

The Nicholas case subsequently was reassigned to Judge Salvador Sarmiento, who determined "the prominence of the Nicholas family in the Orange County community gives rise to such filings being newsworthy . . . ."

In December 2006, Judge Sarmiento issued a second sealing order, based on the parties' stipulation, requiring that any pleading or other document "that relates to the custody of the minor children shall be sealed from public view." The second sealing order further required the court to seal all previously filed documents and to remove them from the court computer system "[s]ince all filings in this matter heretofore have been documents relating to custody . . . ."

In January 2007, Judge Sarmiento filed a third sealing order that restricted access to the court files to the attorneys of record. No other person could access the court files without a prior court order.

In February 2007, Judge Sarmiento, acting on his own motion, filed a fourth sealing order. This order sealed *all* documents in the court file, including documents relating to family finances and holdings in Broadcom. The fourth sealing order did not contain any new findings. Instead, Judge Sarmiento incorporated by reference the blanket findings contained in the second sealing order of December 2006. The fourth sealing order itself was sealed, as was the docket sheet, and the entire court file.

In August 2007, respondent Los Angeles Times Communications LLC (the Times) filed a motion to intervene and to unseal the court records. The Times argued, "While the parties may be able to meet their burden of establishing that the Court should redact certain information about the Nicholases' children, or information such as bank or brokerage account numbers, Social Security numbers, telephone numbers, or home addresses—redactions that the Times does not oppose—they cannot come close to justifying the blanket sealing order that shields the entire court file from public view."

In December 2007, Judge Sarmiento issued a fifth sealing order.[1] The fifth sealing order vacated the fourth sealing order, but did not unseal any

---

[1] Nicholas tactically has chosen to call this order the "Final Sealing Order." Judge Sarmiento himself never used this term which, as we explain below, is a misnomer.

documents. Instead, acting pursuant to Code of Civil Procedure section 639, Judge Sarmiento used the fifth sealing order to appoint a special master to determine which court records, previously filed records and future filings, should be sealed or redacted.

The fifth sealing order provided the special master with general guidelines in recommending which records to seal. The order directed the special master to consider sealing pleadings, declarations, and exhibits that "mention the children." Conversely, the special master should unseal income and expense forms, notices of hearing, as well as pleadings, declarations, and exhibits that did not mention the children.[2]

The fifth sealing order did not contain any findings of fact relating to the particularized standards and procedures in rule 2.550 of the California Rules of Court. Instead, the fifth sealing order incorporated by reference the findings made one year earlier in the second sealing order.

In February 2008, Nicholas and his wife each filed motions seeking further redaction and sealing of court records. Judge Sarmiento transferred the matter to the special master, but the record provides no further information concerning this reference.

B.  *Reassignment to Judge Waltz and Subsequent Sealing Orders*

In April 2008, Nicholas and his wife stipulated to have their matter referred to a retired judge (Judge Thomas Murphy) associated with JAMS to conduct hearings in the dissolution proceeding, including trial. The supervising judge of the Orange County Superior Court family law panel (Judge Francisco Firmat) approved the appointment of Judge Murphy as a temporary judge for all matters except for "[a]ll issues relating to the sealing or unsealing of the contents of the court file [which] remain with the Orange County Superior Court . . . ." Judge Firmat specifically referred to a pending motion to unseal the file.

In June 2008, Judge Firmat reassigned the Nicholas case to Judge Waltz to determine all issues pertaining to the family court's files.

Judge Waltz described the "extraordinary situation" he encountered upon assuming responsibility of the case. The "voluminous" record consisted of

---

[2] For previously filed court records, Judge Sarmiento gave the special master 30 days to make recommendations to the court, and the parties 10 days to file a request for hearing, with the basis for their objections. For new filings, Judge Sarmiento gave the special master five days to make his recommendations, and the parties five days thereafter to file a request for hearing.

banker's boxes filled with sealed, but unlabeled, envelopes. "[A]ny physical inspection of any banker's box yields a sea of large brown envelopes usually without any labeling. The entire file is under lock and key and very hard to access, even to the judge." Even the court's register of actions, some 23 pages long, contained "page after page of non-descriptive filings," with "no clue" about what had been filed. (Italics omitted.) To preserve confidentiality, the court's docket listed each document in a generalized manner that prevented its identification.

Judge Waltz was troubled by the fact that virtually the entire court file was "off-limits" to the public, notwithstanding the holdings in *NBC Subsidiary, supra,* 20 Cal.4th 1178 and *Burkle, supra,* 135 Cal.App.4th 1045, regarding a presumptive right for the public access to records in divorce cases.

In July 2008, Judge Waltz, acting sua sponte, ordered the special master to prepare a privilege log of all pleadings and documents filed under seal, and all pleadings and documents that had been redacted. Once reviewed and approved by the court, Judge Waltz expressed his intent to make these logs available to the public.

In August 2008, Judge Waltz issued a sixth sealing order. The court suspended the special master's appointment and unsealed his prior reports. On its own motion, the court expressed its intention to modify the earlier sealing orders to establish that all future court filings would be presumptively open for public inspection, except by prior court order, under the procedure established in California Rules of Court, rules 2.550 and 2.551. Judge Waltz set a briefing schedule and calendared a hearing for early September.

Shortly before the scheduled hearing, Nicholas filed a peremptory challenge to Judge Waltz. (Code Civ. Proc., § 170.3.) In March 2009, the Los Angeles Superior Court denied the peremptory challenge. We denied Nicholas's petition for writ of mandate. Judge Waltz thereupon reset the hearing on a proposed sealing order, and invited comments.

In the meantime, in April 2009, the temporary judge (Judge Murphy) filed a judgment under seal pertaining to custody and visitation of the minor children.

On July 6, 2009, following a hearing, Judge Waltz issued, by our count, the seventh sealing order in this proceeding. This 15-page single-spaced order detailed the procedural history of the case and the court's legal authority. The court vacated Judge Sarmiento's fifth sealing order because "[b]oth the court and the parties have treated the seal order as a dynamic order, changing the sealing orders according to the needs and circumstances and seeking clarifying orders along the way."

The seventh sealing order specifically unsealed two sets of documents. First, it unsealed all pleadings previously filed under seal pertaining to the hearing on unsealing. Second, it opened for public inspection a redacted copy of the judgment filed under seal by the temporary judge (Judge Murphy) pertaining to the children's custody and visitation. Judge Waltz noted this redacted judgment had been submitted by Nicholas's trial counsel.

The seventh sealing order did not unseal any other document. Instead, Judge Waltz ordered the clerk's office, under the court's direction, to prepare a list of documents that may have been filed under seal erroneously, and to submit this list for review by the parties. Judge Waltz prohibited the removal of any document from the confidential envelope before the parties had an opportunity to comment and object. The court directed the clerk to prepare a log of the entire file and to categorize the contents of each document, including whether it pertained to custody or visitation issues.

Effective August 1, 2009, Judge Waltz directed that all future filings were presumptively open for public inspection unless the filing party adhered to the motion and application procedures of California Rules of Court, rules 2.550 and 2.551 for filing such documents under seal. The court reminded the parties, however, to redact references to social security numbers or financial account numbers.

In July 2009, Nicholas filed a notice of appeal from the seventh sealing order. The order, which directed the unsealing of two particularized and detailed sets of documents, is appealable as a final order on a collateral matter. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 76–77 [70 Cal.Rptr.3d 88] (*Mercury Interactive*).)[3]

Nicholas concurrently filed a petition for writ of supersedeas, and we granted his request for a temporary stay of the seventh sealing order. After receiving opposition from the Times and considering the merits, we denied the petition and dissolved the stay.[4]

---

[3] Sealing or unsealing orders may be appealable as collateral orders if they are self-executing "as the last word by a California trial court on the matters at issue." (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 885–886 [60 Cal.Rptr.3d 501] (*H.B. Fuller*); see also *Burkle, supra*, 135 Cal.App.4th at p. 1051, fn. 6; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 297, fn. 2 [116 Cal.Rptr.2d 833].) Were the present order nonappealable, we would exercise our power to review it as a petition for an extraordinary writ. (*Olson v. Cory* (1983) 35 Cal.3d 390 [197 Cal.Rptr. 843, 673 P.2d 720].)

[4] We deny Nicholas's request to take judicial notice of various records in conjunction with his supersedeas petition; those documents already are part of this court's file. We also deny Nicholas's request that we take judicial notice of exhibits 6 through 8 of his request for judicial notice; those records are contained in the respondent's appendix.

On September 3, 2009, during the pendency of this appeal, Judge Waltz issued an eighth sealing order attaching a list of 32 documents "that appear, at a glance, to be erroneously filed under seal." The court requested the parties to review the list and file any objections before the court determined whether to unseal any documents. The record does not contain any subsequent court orders.[5]

## II

### DISCUSSION

A.  *Judge Waltz Had Continuing Jurisdiction to Modify the Interim Sealing Orders and to Control the Court's Records in Compliance with the Law*

Nicholas brings this appeal to make sealing orders permanent and unalterable. Because no one appealed from the fifth sealing order, entered in December 2007 by Judge Sarmiento, Nicholas believes it to be frozen in time, leaving Judge Waltz without jurisdiction to modify it. He argues, "Given the lapse of the jurisdictional time period for appeal, the Trial Court now lacks jurisdiction and authority to reconsider the Final Sealing Order, or to otherwise modify or alter that order, whether upon request of the Times or its own motion. Accordingly, Judge Waltz's Unsealing Order is in excess of the Trial Court's jurisdiction."

We reject Nicholas's efforts to treat sealing orders as if they sealed caskets rather than presumptively open court records, "stamp[ing] upon our jurisprudence the unchangeableness attributed to the laws of the Medes and Persians." (*Hurtado v. California* (1884) 110 U.S. 516, 529 [28 L.Ed. 232, 4 S.Ct. 111].)

Nicholas's arguments fail for three reasons. First, Nicholas's jurisdictional box runs afoul of constitutional principles, California Supreme Court decisions, and judicial rules concerning the sealing and unsealing of court records.

---

[5] We grant Nicholas's request to take judicial notice of exhibit 9 of his request for judicial notice, which consists of Judge Waltz's minute order of September 3, 2009. The order is relevant to interpreting Judge Waltz's sealing order of July 6, 2009, and whether it purported to unseal the entire court file. The September 3, 2009, order provides: "The court makes reference to its July 6, 2009 ruling, page 13, ruling number 5. The clerk's office has audited the court's file and under the direction of the judge, proposed a list of documents that appear, at a glance, to be erroneously filed under seal. See attached list. Before unsealing said documents, the parties are asked to review the documents and respond in writing with any reason why any particular document should not be un-sealed. [¶] Objections are due not later than October 2, 2009. The court will rule on the pleadings and by minute order."

■ A strong presumption exists in favor of public access to court records in ordinary civil trials. (*NBC Subsidiary, supra,* 20 Cal.4th at p. 1212.) That is because "the public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases." (*Id.* at p. 1210.) Since the First Amendment guarantee of public access to the courts is at stake, family law departments may close their courtrooms and seal their court records only in limited circumstances, and only when they expressly identify the particular facts that support the existence of *NBC Subsidiary*'s constitutional standards. (*Burkle, supra,* 135 Cal.App.4th at p. 1052; see *NBC Subsidiary, supra,* 20 Cal.4th at pp. 1217–1218; Cal. Rules of Court, rule 2.550(d), (e).)[6]

■ Open court records safeguard against unbridled judicial power, thereby fostering community respect for the rule of law. "If public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism. For this reason traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to proceedings and records of judicial tribunals." (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 784 [136 Cal.Rptr. 821].)

■ Since orders to seal court records implicate the public's right of access under the First Amendment, they inherently are subject to ongoing judicial scrutiny, including at the trial court level. "Due to its temporary nature and its infringement upon the public right to know, a sealing order in a civil case is always subject to continuing review and modification, if not termination, upon changed circumstances." (*Copley Press, Inc. v. Superior Court* (1998) 63 Cal.App.4th 367, 374 [74 Cal.Rptr.2d 69] (*Copley Press*) [issuing writ of mandate to compel trial court to grant newspaper's motion to unseal court file relating to settlement of school sexual assault case].)

---

[6] Based on the standards articulated in *NBC Subsidiary, supra,* 20 Cal.4th at pages 1208–1209, footnote 25, the Judicial Council in 2001 adopted two rules (now rules 2.550 and 2.551) of the California Rules of Court concerning sealed records. (See discussion in *Mercury Interactive, supra,* 158 Cal.App.4th at pp. 67–68.) Rule 2.550(d) details the express factual findings required before a court can seal or unseal court records: "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest."

Rule 2.550(e) of the California Rules of Court safeguards First Amendment guarantees of public access by requiring factual findings. Under subdivision (e)(1), a trial court order sealing a record "must . . . [¶] (A) *Specifically state the facts* that support the findings . . . ." (Italics added.)

In *Estate of Hearst, supra,* 67 Cal.App.3d 777, a probate court addressed public access to periodic accountings and other material dealing with the testamentary trust of publishing magnate William Randolph Hearst, given terrorist threats to family members, including the kidnapping of granddaughter Patricia Hearst. On appeal, the *Estate of Hearst* court stressed the public's "legitimate interest in access to public records, such as court documents" (*id.* at p. 784), an interest that was best served by "temporary" limits on access, with a "continuing burden" on the party seeking to seal court records to "periodically show" the need for restricted access (*id.* at p. 785).

■ In this regard, sealing orders are akin to interim provisional orders, like temporary restraining orders or preliminary injunctions, which are appealable. (Code Civ. Proc., §§ 904.1, subd. (a)(6), 904.2, subd. (g).) Nonetheless, unless the action is stayed pending appeal, trial judges retain the inherent power to modify a preliminary injunction, "which is of a continuing or executory nature." (*City of San Marcos v. Coast Waste Management, Inc.* (1996) 47 Cal.App.4th 320, 328 [54 Cal.Rptr.2d 588].) "The fact that a preventive injunction purports to be 'permanent' or 'preliminary' in form is not significant. Unforeseeable circumstances necessitating modification or dissolution of the injunction may occur in either case. When the decree is continuing in nature, directed at future events, it must be subject to adaptation as events may shape the need." (*Union Interchange, Inc. v. Savage* (1959) 52 Cal.2d 601, 604 [342 P.2d 249].)

Thus, the fifth sealing order was a way station, not a final destination. Acting in response to the Times's intervention, Judge Sarmiento set in place a process which would essentially outsource yet-to-be-made determinations regarding the sealing or unsealing of court records to the special master. Yet, as the Times points out, the fifth sealing order itself neither sealed nor unsealed a single document, and did not expressly identify the particular facts necessary to satisfy the constitutional standards for sealing court records, as detailed in rule 2.550 of the California Rules of Court. Instead, the fifth sealing order, like the fourth sealing order it purported to vacate, merely incorporated by reference the same rote recitation of the listed criteria that Judge Sarmiento incorporated in the fourth sealing order and the second sealing order. Such "findings" are not the same as *facts* supporting those findings. Indeed, Judge Sarmiento did not himself describe the fifth sealing order as a "final" collateral order. Neither do we.[7]

---

[7] If any order can be said to be a so-called "final sealing order," a term which appears nowhere in any California case, published or unpublished, it is Judge Sarmiento's fourth sealing order, which entombed the entire case file, without exception, from public view. Yet Judge Sarmiento himself vacated this order in the fifth sealing order. We see no reason why the fifth sealing order should be considered "final" when the fourth sealing order was not.

Judge Firmat, the supervising judge of the family law department, confirmed the provisional nature of Judge Sarmiento's sealing orders when he transferred the Nicholas divorce proceedings from Judge Sarmiento to Judge Waltz. In stating that Judge Waltz's judicial responsibilities included the sealing or unsealing of court records, Judge Firmat specifically mentioned the Times's pending motion to unseal.

■ Second, we reject Nicholas's jurisdictional argument because it would eliminate the court's express authority to *unseal* records. California Rules of Court, rule 2.551(h), authorizes trial judges to issue orders to unseal records that previously have been sealed by prior court orders. Indeed, *any* person, not just litigants, can move, apply, or petition to unseal any court record. In determining whether to unseal a record, the court is required to consider the elements outlined in California Rules of Court, rule 2.550(c)–(e). (Cal. Rules of Court, rule 2.551(h)(4).) No showing of changed circumstances is necessary on a motion to unseal. (*Copley Press, supra,* 63 Cal.App.4th at pp. 374–375.) Unsealing orders accomplish precisely what Nicholas contends judges should be barred from doing—revisiting preexisting sealing orders.

As the *Copley Press* court emphasized, the power to unseal is a critical safeguard for the public's right to know. "The public has a legitimate interest in access to court documents because '[i]f public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism.' [Citation.]" (*Copley Press, supra,* 63 Cal.App.4th at p. 373.)

Third and last, Nicholas's argument that Judge Waltz was powerless to modify sealing orders issued by Judge Sarmiento, his predecessor in the same dissolution proceeding, ignores a (albeit lamentable) "culture of rotation" in urban family law departments (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 247, fn. 10 [91 Cal.Rptr.3d 241]), as well as the express authority of successor judges to control their own case files and to alter or amend orders issued by their predecessors in the same case. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1097 [29 Cal.Rptr.3d 249, 112 P.3d 636] (*Le Francois*); see also *New Tech Developments v. Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065, 1069–1070 [236 Cal.Rptr. 746] [second judge may dissolve injunction issued by first judge, who was unavailable].) Here, Judge Waltz inherited the case and the attendant responsibilities to run an open and accessible courtroom. On his own motion, he initiated a hearing on the indecipherable and unmanageable recordkeeping process.

■ Given the judiciary's " 'core power to decide controversies between parties,' " a trial court retains the authority to alter or amend its own rulings in the same case, whether made by the same judge or by his or her

predecessor. Any other restriction " 'would directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice.' " (*Le Francois, supra,* 35 Cal.4th at p. 1104.) " ' "A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors . . . ." ' [Citation.]" (*Id.* at p. 1105.)

■ Judge Waltz acted properly in issuing the seventh sealing order to revisit previous sealing orders, including the fifth sealing order, that impaired public access and hampered his ability to supervise the case. Plainly, the power to issue sealing and unsealing orders underscores the provisional nature of sealing remedies. A court is—or should be—"master of its own files." (*H.B. Fuller, supra,* 151 Cal.App.4th at p. 889.)

Nicholas relies upon *Church of Scientology v. Armstrong* (1991) 232 Cal.App.3d 1060 [283 Cal.Rptr. 917] (*Scientology*) to deprive Judge Waltz of authority to conduct what Nicholas contends amounts to an "appellate review" of Judge Sarmiento's fifth sealing order of December 2007. According to Nicholas, "*Scientology*—whatever the merits of its holding regarding the standards for issuance of an order to seal court records—establishes that one trial judge may not revisit and 'overturn' the final orders of a prior trial court judge . . . ."

We lack Nicholas's faith in *Scientology*. There, a church and a former member settled their dispute at the end of the case-in-chief by stipulating that all court records would be returned to the church and the court files sealed from public view. Following the settlement, a litigant in another case against the church convinced the trial judge's successor to unseal the records. On the church's appeal, the Court of Appeal reversed, holding that too much time had passed "and the parties had the right to rely on the sealing order." (*Scientology, supra,* 232 Cal.App.3d at pp. 1069–1070.)

The *Scientology* court's stated rationale cannot stand in the face of subsequent decisional and statutory law. *Scientology* predates the California Supreme Court's landmark decision in *NBC Subsidiary* that precluded trial courts from sealing the records of civil proceedings absent noticed hearings and findings to justify such restrictions. (*NBC Subsidiary, supra,* 20 Cal.4th at pp. 1181–1182.) Parties no longer can stipulate, as in *Scientology*, to seal certain records from public view. (*H.B. Fuller Co., supra,* 151 Cal.App.4th at p. 891 [sealing order must be based on facts, as found by the trial court, not stipulation by the parties]; see Cal. Rules of Court, rule 2.551(a) [a "court must not permit a record to be filed under seal based solely on the agreement or stipulation of the parties"].)

B. *Judge Waltz Did Not Abuse His Discretion in Issuing the Seventh Sealing Order**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### DISPOSITION

The trial court's order of July 6, 2009, is affirmed. Costs on appeal are awarded to respondent Los Angeles Times Communications LLC.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

---

*See footnote, *ante*, page 1566.