Filed 5/5/14  Bedrosian  Vista v. Mossy European Imports CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BEDROSIAN VISTA, LLC, | D063845 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00038941-CU-BC-NC) |
| MOSSY EUROPEAN IMPORTS, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Blackmar, Principe & Schmelter and Timothy D. Principe for Defendants and Appellants.

Palmieri, Tyler, Weiner, Wilhelm & Waldron, Michael H. Leifer and Erin B. Naderi for Plaintiff and Respondent.

This dispute involves interpretation of a declaration of covenants, conditions and restrictions (CC&R's) providing parking easements over three parcels of land located in the City of Vista (City).  Parcel 1 is owned by plaintiff Bedrosian Vista, LLC

(Bedrosian), parcel 2 by the defendant City, parcel 3 by defendant Mossy European Imports, Inc. (Mossy). The City leases parcel 2 to Mossy. The CC&R's provide that, with the exception of 20 undesignated parking spaces for the customers and invitees of parcel 2, the owners of parcels 2 and 3 had no right to use parcel 1's parking area. Despite that provision, Mossy, an auto dealership, began storing its vehicle inventory on parcel 1.

When Mossy and the City ignored Bedrosian's demand that they comply with the parking restrictions in the CC&R's, Bedrosian brought this action against Mossy and the City seeking to prevent Mossy from storing its inventory vehicles on Bedrosian's property. The court issued an injunction in favor of Bedrosian, concluding that under the parking easements governing the parking rights of the parties, Mossy had no right to park on Bedrosian's parcel 1 and the City had a duty to prevent its tenant, Mossy, from violating those easements.

Mossy and the City appeal, asserting (1) the court abused its discretion in granting an injunction against the City because it lacked jurisdiction to do so; (2) the injunction against the City is void because no timely bond in favor of the City was posted; (3) the court abused its discretion in issuing a "mandatory" injunction against Mossy that compelled it to remove its vehicles from Bedrosian's property; and (4) the court abused its discretion in setting a bond in the amount of only $25,000. We affirm.

2

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Properties*

The subject properties are adjacent to each other and are located on the southerly frontage of Interstate 78 in the City. Currently, the three adjacent parcels are separately owned by Bedrosian (parcel 1), the City (parcel 2), and Mossy (parcel 3).

In 2001 the original developer recorded the original CC&R's. Among other things, the original CC&R's provided reciprocal parking easements. The use of the easements was limited to "pedestrian and vehicular ingress and egress purposes and vehicle parking . . . as may be reasonably necessary to provide the Parcel Owners and their tenants and their respective permittees and invitees with access from the adjoining public streets, adjoining parcels, and parking."

After the adoption and recordation of the original CC&R's, the original developer later sold the three parcels. In 2010 an amendment to the CC&R's was recorded (the amended CC&R's).

Parcel 1 is located at 1725 Hacienda Drive and consists of 8.9 acres and a 100,000-plus square foot commercial building. Parcel 1 is occupied by three retail tenants, Bedrosians, a ceramic tile and stone retailer and distributor; Ferguson Enterprises, Inc.; and House of Motorcycles.

Parcel 2 is located at 1715 Hacienda Drive and is owned by the City. The City purchased it in early 2010 to lease it to Hitchcock Commercial Properties (Hitchcock) for operation of a BMW dealership.

3

In 2010, in order to accommodate the new BMW dealership, the then-owners of the three parcels entered into the amended CC&R's. The amended CC&R's excluded Parcel 2 from the reciprocal parking easement provided in section 1.2.1 of the original CC&R's. As a result, parcels 1 and 3 had no right to use the parking area over parcel 2. Parcel 2 also waived its right to use the parking area over parcels 1 and 3, with the limited exception of 20 undesignated customer parking spaces on parcel 1. The amended CC&R's provide that, "[e]xcept for the right to use twenty (20) undesignated spaces on Parcel 1 for the invitees, customers, and/or employees of the use occupying Parcel 2 *as described in Section I(b) below,* the Owner of Parcel 2 hereby agrees to waive any rights that it may have (for itself and its customers, invitees, contractors, and employees) either (1) to use the parking spaces in Parcel 1 and/or (2) to limit the use of the parking areas on Parcel 1 by the owners , tenants or customers of Parcel 1." (Italics added.) Section I(b) limits the parcel 2 use of the 20 unreserved spaces to parcel 2's "customers and invitees." The amended CC&R's provide that except for the 20 undesignated spaces for customer parking, parcel 2: "[H]ereby agrees to waive any rights that it may have (for itself and its customers, invitees, contractors, and employees) either (1) to use the parking spaces in Parcel 1 and/or (2) to limit the use of the parking areas on Parcel 1 by the owners, tenants or customers of Parcel 1."

Hitchcock operated the BMW dealership from parcel 2 until approximately 2012. In January 2012 the Hitchcock lease with the City was assigned to Mossy.

Under the CC&R's, the City, as owner of parcel 2, is responsible for the actions of its tenant, Mossy. However, the City did not prevent Mossy from storing approximately 100-plus units of its vehicle inventory on Bedrosian's parcel 1.

In 2012 Mossy bought parcel 3. Parcel 3 has no City entitlements. It has not been permitted for any use. The CC&R's require the parcel owners to comply with all applicable requirements of governmental agencies. Mossy, however, has been occupying parcel 3 as part of its dealership operations without obtaining any entitlements or permits for such dealership operations. While this violation has been brought to the attention of City staff and code enforcement, the City has not acted to prevent Mossy's violations.

B. *The Parcel 2 BMW Dealership's Occupation of Parcels 1 and 3*

In or around March 2012, Mossy approached Bedrosian to amend the CC&R's again. Mossy sought, among other things, to exclude parcel 3 from the parking easements, making parcel 3 an exclusive use for that owner, and also sought exclusion from building restrictions. Mossy also sought the right for parcel 2 to have exclusive use over approximately 72-plus parking spaces on Bedrosian's parcel 1.

Bedrosian did not agree to the requested further amendments. Nevertheless, Mossy began occupying portions of the parcel 1 parking area for the storage of its vehicle inventory. Mossy blocked off the parking areas and was impacting access. Despite its earlier attempt to get Bedrosian to amend the CC&R's, Mossy thereafter claimed it did not need a further amendment from Bedrosian.

The storage of Mossy's inventory on parcel 1 became problematic. The inventory storage interfered with Bedrosian's property rights and the use and operations of its tenants. Bedrosian's tenants complained to Bedrosian regarding Mossy's actions.

Bedrosian made a number of demands directly to Mossy and the City to stop Mossy's violation of the CC&R's. However, they did not comply with Bedrosian's demands.

C. *The Complaint and Temporary Restraining Order* (*TRO*)

In March 2013 Bedrosian filed a complaint against Mossy and the City that included causes of action for breach of contract, enforcement of equitable servitudes and declaratory relief, as well as a cause of action against Mossy for trespass.

Bedrosian thereafter sought an ex parte order to show cause re preliminary injunction and TRO against the City and Mossy. The City did not oppose, object to or appear at the ex parte hearing.

Following the hearing, the trial court issued a minute order, which stated that the "[e]x [p]arte application for preliminary injunction and TRO is denied at this time." Nevertheless, the court ordered Mossy to confine its activities to parcels 2 and 3. Further, subsequent minute orders of the court demonstrated that the court treated the TRO as having been granted. For example, when the court issued its minute order taking the injunction motion under submission, the court stated, "The Court orders that the temporary restraining order remains in place until further court order." In the minute order granting the preliminary injunction the court stated, "[A] review of the documents submitted suggest[s] that Defendant is already violating the TRO previously signed . . . ."

6

Indeed, after the ex parte hearing, Mossy followed the court's order by removing its vehicle inventory from parcel 1.

The court's order following the ex parte hearing also set a preliminary injunction hearing for April 11, 2013, and ordered a briefing schedule in advance of that hearing date.

D. *The Preliminary Injunction Order*

Prior to the April 11, 2013 preliminary injunction hearing, Bedrosian and Mossy submitted further briefing, declarations, evidence and objections. The City did not submit any written opposition.

Also prior to that hearing, Bedrosian's counsel learned that Mossy was violating the court's ex parte order by again storing inventory vehicles on parcel 1. On April 9, 2013, Bedrosian filed a declaration of principal Larry E. Bedrosian notifying the court of this violation.

The City and Mossy did not request a court reporter at the April 11, 2013 preliminary injunction hearing. Following argument, the matter was taken under submission. The trial court ordered that the prior TRO would remain in place pending the order on the preliminary injunction.

On April 11, 2013, the court granted the preliminary injunction. The court's order prohibited the City and Mossy from using parcel 1 for "parking vehicles, whether inventory, service related, or transportation vehicles." The order also stated that it did not extend to customers of Mossy or the City. While the trial court recognized that Mossy's use of parcel 3 appeared to be a violation of the CC&R's, the trial court declined to issue

7

a preliminary injunction prohibiting Mossy's use of its own property. The court also ordered that Bedrosian post a $25,000 bond.

On May 10, 2013, Bedrosian filed a notice of undertaking evidencing the $25,000 bond ordered as a part of the preliminary injunction.

E. *Motion Objecting to the Bond Amount*

After the posting of the bond, the City and Mossy filed a motion objecting to the amount of the preliminary injunction bond. Subsequently, the City and Mossy filed an ex parte application requesting that the trial court rule on such motion at the ex parte hearing.

Bedrosian filed an opposition and a supplemental opposition to the objection to the bond amount.

Again, the ex parte hearing was unreported. The court denied the City and Mossy's ex parte application and, on defendants' request, the motion objecting to the bond amount previously set for August 2, 2013, remained on calendar.

The parties submitted further briefing prior to the August 2, 2013 hearing date on the motion objecting to the preliminary injunction bond,. The court issued a tentative ruling providing that the bond amount would remain as set and that the bond should clarify that it includes the City. The parties submitted on the trial court's tentative ruling which became the order of the court.

On August 7, 2013, Bedrosian filed a notice of amended undertaking providing the bond include reference to the City.

8

DISCUSSION

## I. *STANDARD OF REVIEW*

"A trial court must weigh two interrelated factors when deciding whether to grant a plaintiff's motion for a preliminary injunction: (1) the likelihood that the plaintiff will prevail on the merits at trial, and (2) the relative interim harm to the parties from the issuance or nonissuance of the injunction, that is, the interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the preliminary injunction is issued." (*SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 280.) " 'A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.' [Citation.] Accordingly, the trial court must deny a motion for a preliminary injunction if there is no reasonable likelihood the moving party will prevail on the merits." (*Ibid.*)

We generally review a court's order granting or denying an application for a preliminary injunction for abuse of discretion. (*SB Liberty, LLC v. Isla Verde Assn., Inc.*, *supra*, 217 Cal.App.4th at pp. 280-281.) However, to the extent the court's order depends on its determination of a question of law, we independently review the determination. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408-409.)

Further, the setting of the amount of an injunction bond is an exercise of the trial court's discretion "and will not be disturbed on appeal unless it clearly appears that the trial court abused its discretion by arriving at an estimate that is arbitrary or capricious or is beyond the bounds of reason." (*ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d

9

1, 14; *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1061; *Hummell v. Republic Fed. Savings & Loan Assn.* (1982) 133 Cal.App.3d 49, 51; *Greenly v. Cooper* (1978) 77 Cal.App.3d 382, 390.)

## II. *ANALYSIS*

### A. *The Preliminary Injunction Order Was Prohibitory*

Mossy and the City contend the trial court's preliminary injunction order was a "mandatory" injunction that is subject to stricter scrutiny and may only be issued in "extreme cases." Specifically, they assert that the order changed the "status quo" because Mossy had to drive the BMW's off of parcel 1 or tell the vehicle transportation company not to deliver vehicles to parcel 1. This contention is unavailing.

The trial court's preliminary injunction order prohibits the "parking [of] vehicles, whether inventory, service related, or transportation vehicles, on the property of parcel 1." The fact that to comply with the order Mossy had to move its vehicles off of parcel 1 does not change the prohibitory nature of the injunction. Injunction orders are considered prohibitory as a matter of law even if they have incidental mandatory features. (*United Railroads of San Francisco v. Superior Court* (1916) 172 Cal. 80, 82; *Youngblood v. Wilcox* (1989) 207 Cal.App.3d 1368, 1372, fn. 1.)

### B. *The Court Had Jurisdiction To Issue an Injunction Against the City*

The City argues the court was without jurisdiction to issue an injunction against it because there was no evidence that it was acting in "complicity" with Mossy. We reject this contention.

10

As we have noted, *ante*, the CC&R's provide that the City is prohibited from allowing its tenant Mossy to store any of its inventory on Parcel 1.

However, the City took no steps to remedy Mossy's violation after it was notified of that violation. Thus, the TRO and preliminary injunction order were properly issued against the City as the owner of parcel 2 for permitting its tenant to violate the CC&R's.

Further, the City, as noted, *ante*, did not file any opposition to the motion for preliminary injunction. Thus, this contention has been waived. (*City of San Marcos v. Coast Waste Management, Inc.* (1996) 47 Cal.App.4th 320, 328.)

The City argues that the preliminary injunction is improper because it "requir[es] [the] City to insure that all of its 'employees and agents' not park in a public shopping center . . . including law enforcement officers, which as 'agents' of the City are barred from responding to calls and parking in the lot."

If the City was concerned the injunction could be so construed, it was incumbent upon it to bring that issue to the court's attention. The City has waived this argument by failing to object to the preliminary injunction order. Failure to object to the form of the preliminary injunction order amounts to a waiver of the objection on appeal. (*City of San Marcos v. Coast Waste Management, Inc., supra,* 47 Cal.App.4th at p. 328.)

The City agreed in the first amendment to the CC&R's, as the parcel 2 owner, it "waive[d] any rights that it may have (for itself and its customers, invitees, contractors, and employees) . . . to use the parking spaces in Parcel 1 . . . ." Nothing in the first amendment or the preliminary injunction order can be construed to prohibit police officers or fire personnel from responding to an emergency.

11

C. *The Court Did Not Abuse Its Discretion in Issuing the Injunction*

1. *Bedrosian established a strong likelihood of prevailing on the merits*

The trial court found that Bedrosian made a strong showing of a likelihood of prevailing on its claim that the CC&R's do not permit inventory storage on parcel 1. We conclude the court did not err in making that finding.

The City and Mossy argue that the CC&R's are reasonably susceptible to an interpretation that inventory storage on parcel 1 is not prohibited. However, in doing so, they do not cite to the record. It is an appellant's burden to present argument and legal authority on each point raised. (See *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [appellate court need not furnish argument or search the record to ascertain whether there is support for appellant's contention].) Thus, we conclude this argument is waived. (*EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775 [issue deemed waived where defendants failed to support claim by argument, discussion, analysis, or citation to record].)

Even assuming that the CC&R's were reasonably susceptible to the City and Mossy's claim that "parking" includes unregistered vehicular inventory storage, then the CC&R's would at most be ambiguous and subject to extrinsic evidence on the issue. (See *Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766.) At the preliminary injunction hearing, the only extrinsic evidence offered was the declaration of Larry Bedrosian. That declaration stated that in the first amendment to the CC&R's, parcel 2 waived the right to utilize the parking area of parcel 1. The first amendment excluded parcel 2 from the reciprocal parking easement provided in section 1.2.1 of the original CC&R's.

12

Specifically, the parcel 2 owner (the City) agreed "to waive any rights that it may have (for itself and its customers, invitees, contractors, and employees) either (1) to use the parking spaces in Parcels 1 and/or (2) to limit the use of the parking areas on Parcel 1 by the owners, tenants or customers of Parcel 1."

The amended CC&R's did provide parcel 2 with a limited right to use 20 unreserved parking spaces on parcel 1, but only for use by parcel 2's "customers and invitees." Thus, under the CC&R's, the City, as the parcel 2 owner, and Mossy as its tenant, are only permitted to use parcel 1 as to the 20 unreserved spaces by "customers and invitees" of the parcel 2 business.

The City and Mossy assert that Bedrosian "expressly acknowledged that Mossy was entitled (under the First Amendment) to park 20 'noninventory' vehicles" and that the trial court's ruling impeded that "admitted" right. This contention is unavailing. The court's order specifically states that "Customers of Defendants shall not be precluded from parking in Parcel 1."

As we have discussed, under the CC&R's, "[e]ach Parcel Owner shall have access over, across, in, under and through each Parcel for the purpose of pedestrian and vehicular ingress and egress purposes and *vehicle parking* . . . as may be reasonably necessary to provide the Parcel Owners and their tenants and their respective permittees and invitees with access from the adjoining public streets, adjoining parcels, and parking." (Italics added.) "Parking" cannot be reasonably interpreted to mean inventory storage.

13

Indeed, the original CC&R's referred to inventory storage separately. The original CC&R's specifically provided for an area for the "staging of inventory" by the parcel 1 tenant in the area behind and adjacent to the building on parcel 1. (!1AA 37 [¶] 2.6(a), 1AA 229.)! If "parking" were synonymous with inventory storage, that provision would not be necessary. (See *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473.)

Moreover, parcel 3 has no right to use the parcel 1 parking area until it is entitled and developed. The CC&R's require use of the properties as approved by governmental requirements: "Each Parcel Owner shall maintain the Property and conduct its business thereon in compliance with all federal, state or local laws . . . ." However, parcel 3 has not been entitled for any use. Therefore, if Mossy uses parcel 3, it violates City regulations and the CC&R's.

Further, contrary to the City and Mossy's contentions, Bedrosian established that irreparable injury would be caused if the preliminary injunction were not issued. A defendant's repeated acts of trespass, such as occurred here, justifies the issuance of injunctive relief. (6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies § 302, p. 241; *United Railroads of San Francisco v. Superior Court, supra,* 172 Cal. at p. 84; *Uptown Enterprises v. Strand* (1961) 195 Cal.App.2d 45, 52.)

The issuance of an injunction is also proper to protect a party from wrongful interference with a lawful business, as occurred in this case. (6 Witkin, Cal Procedure, *supra*, ¶ 309, p. 247.)

14

Finally, contrary to the City and Mossy's contention, Bedrosian's tenants' operations *were* being impacted by their violations of the CC&R's and occupation of parcel 1. Tenants complained that the actions of City and Mossy were impacting their businesses.

In their reply brief Mossy reference the following quote from this court's decision in *Red Mountain, LLC v. Fallbrook Public Utility Dist*. (2006) 143 Cal.App.4th 333, 350: "'Normal future uses [of an easement] are within the reasonable contemplation of the parties and therefore permissible, but uncontemplated abnormal uses, which greatly increase the burden, are not.'" However, Mossy's actions, which are directly contrary to the provisions of the CC&R's, cannot be considered "normal future uses" as contemplated by the parties. Mossy also neglects to mention another statement in that same paragraph of the opinion that "[t]he owner of an easement cannot materially increase the burden of the easement on the servient estate or impose a new burden." (*Ibid.*) As we have discussed, Mossy's storage of inventory vehicles did increase the burden on parcel 1.

D. *The Bond Amount Was Proper*

The City and Mossy assert that the court abused its discretion in setting the bond amount at $25,000. We reject this contention.

In asserting the bond amount was improper, the City and Mossy rely on *ABBA Rubber Co. v. Seaquist, supra,* 235 Cal.App.3d 1. However, that case does support this contention. In *ABBA Rubber*, the trial court set a bond of $1,000 where the injunction, arising out of a trade secret claim, stopped the defendant from operating a segment of its business. However, in reaching its decision that the bond ordered was insufficient, the

15

appellate court did not hold that such a bond would never be appropriate: "In the abstract, $1,000 is not an insignificant sum. It may be an appropriate undertaking in cases of harassment or *trespass*." (*Id.* at p. 15, fn. 7, italics added.)

Here, the bond amount was proper in light of the scope of the preliminary injunction granted and the lack of evidence supporting a larger amount. The preliminary injunction sought by Bedrosian was broader than the preliminary injunction ordered. Bedrosian's motion requested that Mossy also be prohibited from using parcel 3 for inventory storage. As the court noted, Bedrosian established a likelihood of success on the merits demonstrating that the CC&R's did not permit use of parcel 3 by Mossy because parcel 3 has not been entitled for any use. Mossy is not prohibited from running the approved aspects of its business and is not being enjoined from using an additional acre of land for which it has no approval to use for that business. As to the City, it has not submitted any evidence that it would suffer any damages at all. As the court stated, "The Court finds this amount to be appropriate under the circumstances, and the Court's denial of the request to include Parcel 3 parking in this injunction."

Thus, the court did not abuse its discretion in finding the $25,000 bond was appropriate under the circumstances of this case.

The City and Mossy assert that court erred in changing the bond after the fact to reference the City. This contention is also unavailing.

In support of that claim the City and Mossy cite *Casitas Inv. Co. v. Charles L. Harney, Inc.* (1962) 203 Cal.App.2d 811. They claim this failure voids the injunction and the trial court's later order trying to fix it "nunc pro tunc" does not cure it. *Casitas*

16

does not stand for that proposition. In *Casitas*, the trial court's preliminary injunction order did not include *any* bond. (*Id.* at p. 815.) About a month after the preliminary injunction order, the trial court tried to fix its error by entering a nunc pro tunc order providing that the prior bond filed pursuant to its TRO against different parties at a time no injunction existed would continue as security for the preliminary injunction order. (*Ibid.*) In concluding that the injunction must be set aside, the Court of Appeal noted that at the time the bond was posted, no injunction proceeding was pending against the third defendant, so the bond could not run in its favor. (*Id.* at pp. 815-818.)

Here, however, the trial court's preliminary injunction did order a bond in favor of both defendants. The City and Mossy thereafter objected to the form, provided by the bonding company, of the caption naming only Mossy and the use of the singular "defendant." The use of "defendant" and the caption was not an error of the trial court but an error *by the bonding company.* Moreover, when the City and Mossy objected to the form of the bond, they did not seek to have the injunction dissolved. Rather, the City and Mossy's objection requested that the bond include reference to the City. The court thereafter ordered the bond be amended to include reference to the City, and it was so amended.

Further, at the hearing on the preliminary injunction, Mossy and the City did not submit credible evidence to support its claim for an increased bond amount. In opposition to the preliminary injunction, Mossy and the City first sought a $500,000 bond. In their motion objecting to the amount of the preliminary injunction bond, they

17

then reduced their request to $275,000. In their reply brief to that same motion, Defendants then reduced their request to $150,000.

The only evidence Mossy submitted in support of its request for an increase in the bond amount was a declaration of its general manager, Brian Kennedy. Kennedy's declaration asserted, without any documentary support, that after the TRO hearing, Mossy "relocated its remaining inventory of approximately 100 vehicles to an emergency, offsite lease location" and that "Mossy was forced to procure an emergency, short term lease, for which it is paying $5,350 per month in base rent . . . ." No information was provided concerning the location of this "emergency" site. No lease was submitted and no cancelled checks. Thus, the court did not err in rejecting Mossy and the City's claim the bond amount should be increased.

In sum, the court acted well within its discretion in ordering the $25,000 bond given the facts presented and the scope of the injunction granted.

## DISPOSITION

The order granting preliminary injunction is affirmed. Bedrosian shall recover its costs on appeal.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

18