Filed 11/29/21; Certified for Publication 12/20/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of CELINE and YORAM TAMIR | |
| CELINE TAMIR et al., <br><br> Plaintiffs and Appellants, <br> v. <br> YORAM TAMIR, <br><br> Defendant and Respondent; <br><br><br> THE PEOPLE ex rel., ROB BONTA, as Attorney General, etc., <br><br> Intervener and Respondent. | A161782 <br><br> (San Mateo County Super Ct. No. FAM0113496) |

In connection with divorce proceedings and a related lawsuit, Isaac Soncino, Celine Tamir, and Yoram Tamir[1] exchanged certain financial documents pursuant to two stipulated protective orders. Soncino and Celine also filed certain documents under seal with the family court on two occasions. The Attorney General subsequently filed a motion to unseal the

---

[1] Isaac Soncino and Celine Tamir are siblings, and Yoram Tamir is Celine's ex-husband. We will refer to Celine Tamir and Yoram Tamir by their first names when necessary to distinguish them. No disrespect is intended.

records and set aside the protective orders, asserting that the documents were relevant to its investigation into the misuse of funds by a public charity operated by Soncino and the Tamirs. The trial court granted the Attorney General's motion.

On appeal, Soncino, Celine, and their three family businesses (appellants) argue the family court erred in unsealing the records and setting aside the protective order. They contend the family court judge lacked authority to rule on the motion, the Attorney General did not seek the records pursuant to any acknowledged right of public access, and the family court abused its discretion in unsealing the records and terminating the protective order. In response, the Attorney General argues it is entitled to the records because its enforcement efforts with regard to public charities outweighs any right of privacy. We conclude the family court had authority to rule on the Attorney General's motion. We further conclude the Attorney General is entitled to seek the records on behalf of the public and appellants failed to identify a privacy interest that outweighs the public right to access. However, we conclude the family court failed to assess whether the documents at issue were used at trial or submitted as a basis for adjudication, and erred in setting aside the protective orders. Accordingly, we reverse the order granting the motion to unseal and remand to the family court to determine, in the first instance, whether the documents at issue were related to the underlying matter's adjudication.[2]

---

[2] In footnote 2 of their opening brief, appellants requested this court take judicial notice of the San Mateo County Superior Court's online directory of judges. Pursuant to California Rules of Court, rule 8.252(a)(1), "a party must serve and file a separate motion with a proposed order" to obtain judicial notice. Appellants failed to do so, and we thus deny their request.

# I. BACKGROUND

Soncino, Celine, and Yoram created two for-profit organizations: Newton — The Children's Learning Center, Inc. and Musicart, Inc. Those entities provided music enrichment and after-school education services. Soncino, Celine, and Yoram also formed Newton Center, a nonprofit organization "to further expand the Partnership business by having a charitable organization that could contract with various public entities . . . ." The for-profit organizations provided services, which were then paid for with funds from Newton Center.

Soncino and Celine subsequently filed *Soncino v. Tamir* (Super. Ct. San Mateo County, No. CIV508495), against Yoram and the three family businesses. Soncino and Celine alleged various claims against Yoram, arising from alleged efforts by Yoram to obtain a large stake in the family businesses via his and Celine's divorce proceedings. The complaint also alleged Yoram had misappropriated property belonging to the family businesses.

At that same time, a marital dissolution action was pending between the Tamirs, *In re Marriage of Tamir* (Super. Ct. San Mateo County, No. FAM0113496) (*Marriage of Tamir*). The complaint filed by Soncino and Celine was joined to the pending divorce proceedings between the Tamirs. During the course of the dissolution proceeding, the parties filed a "Stipulation and Order re Confidential Protective Order; and Agreement to Comply with Stipulation and Order re Confidential Protective Order," which was subsequently signed by Judge Pro Tem Marjorie A. Slabach.[3] The protective order prevented Celine from disclosing or sharing certain

_____

[3] Judge Pro Tem Slabach was appointed to handle the pending divorce proceedings until its final determination in the superior court.

3

information and documents she obtained from Yoram's desk and the marital residence without his consent or knowledge. During the course of the parties' litigation, two sealing orders were entered by Presiding Judge Joseph C. Scott.[4] At least two requests for sealing directed to the court involved records containing the parties' compensation, salary, and expenses, as well as unspecified "personal information."

During the trial of the joined matters, the family court addressed on a bifurcated basis the ownership interests in the family businesses. Soncino and Celine argued the businesses were formed as a partnership between them and Yoram, and remain a partnership despite the corporate form. Yoram argued he and Celine started the business and own it "as community property in corporate form." Based on various evidence regarding Soncino's and the Tamirs' joint management, compensation, and profit-sharing, the court ruled in favor of Soncino and Celine, finding that Soncino was a one-third partner in the ownership interest of the businesses. The court further concluded Soncino and the Tamirs used the business funds for personal expenses. Judgement in the civil matter was entered in 2012, and the dissolution was finalized in 2014.

In 2019, the Attorney General filed a complaint against the family businesses, Soncino, and the Tamirs for accounting, restitution, involuntary dissolution, injunctive relief, aiding and abetting breach of fiduciary duty, and misrepresentation, *People v. Newton Center* (Super. Ct. San Mateo County, No. 19CIV02188). In connection with that lawsuit, the Attorney General filed a motion to unseal court records in *Marriage of Tamir* and

---

[4] Appellants have not included in their appellants' appendix the corresponding motions to file under seal or the tentative rulings issued by the court. Accordingly, the record is devoid of information regarding the scope of materials sealed.

*Soncino v. Tamir*. The Attorney General argued the public portions of the records in those matters indicate Soncino and the Tamirs were comingling charitable funds and using those assets for personal expenses. The motion argued Soncino and the Tamirs inappropriately sealed the books and records of Newton Center, along with deposition testimony regarding the Newton Center and its finances.

Soncino, Celine, and the family businesses opposed the motion to unseal. They argued the Attorney General was not entitled to Celine's financial records as they related to the for-profit entities. They asserted the Attorney General was required to pursue such records via requests for production and other discovery tools. Soncino, Celine, and the family businesses also asserted the Attorney General's motion was defective because it failed to include the sealing orders being challenged and was not brought before the court that entered the orders.

The trial court denied the motion to unseal the court records and terminate the protective orders in *Marriage of Tamir* and *Soncino v. Tamir*. Judge Davis explained, "The requested relief must be sought from the judge or court that entered the original sealing orders, under the general rule that 'The power of one judge to vacate an order duly made by another judge is limited.' " The court further explained the Attorney General only presented a small portion of the pertinent record, "which notably excludes the original sealing orders. Consequently, this court is not in a position to determine the merits of the People's motion."

In 2020, the Attorney General filed another motion to unseal. This time, however, the Attorney General filed the motion in *Marriage of Tamir* and *Soncino v. Tamir*, rather than through a separate action. The Attorney General raised the same arguments set forth in its prior motion.

Soncino, Celine, and the family businesses again opposed the motion. They argued *Marriage of Tamir* and *Soncino v. Tamir* did not involve Newton Center, and the Attorney General's request instead sought private financial information. They asserted the right to financial privacy outweighed any right of access asserted by the Attorney General. They also raised various procedural challenges to the motion.

The motion was assigned to Judge Sean P. Dabel. The family court granted the Attorney General's motion and ordered that records from *Marriage of Tamir* and *Soncino v. Tamir* "be unsealed, and the protective orders filed December 12, 2011 and September 17, 2012 lifted as to the People of the State of California, Office of the Attorney General." The court concluded it was the proper court to consider the unsealing request, the Attorney General "made a sufficient showing in good faith to set aside the sealing order and protective orders," and the court adopted the Attorney General's argument and analysis. Appellants timely appealed.[5]

## II.  DISCUSSION

### A.  Access to Court Records

Courts in California have long recognized a common law right of access to public documents, including court records. (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 483 (*Overstock*).) Under the common law right of access, court records are presumed to be " 'open to the public unless they are specifically exempted from disclosure by

---

[5] An order on a motion to seal or unseal documents is appealable as a final order on a collateral matter. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 77 (*Mercury Interactive*) [order granting motion to seal]; *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410 [order denying motion to unseal].)

6

statute or are protected by the court itself due to the necessity of confidentiality.' " (*Ibid.*)

California law also recognizes a constitutional right of access, grounded in the First Amendment, to court proceedings and court documents. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1208, fn. 25 (*NBC Subsidiary*); *In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, 1575 (*Nicholas*); *Overstock, supra,* 231 Cal.App.4th at p. 484.) "A strong presumption exists in favor of public access to court records in ordinary civil trials. [Citation.] That is because 'the public has an interest, in *all* civil cases, in observing and assessing the performance of the judicial system, and that interest strongly supports a general right of access in ordinary civil cases.' " (*Nicholas*, at p. 1575.) Because orders to seal court records implicate the public's right of access under the First Amendment, such orders are subject to ongoing judicial scrutiny, including at the trial court level. (*Ibid.*)

## B. The Sealed Records Rules

California Rules of Court,[6] rules 2.550 and 2.551 (jointly, the sealed records rules) codify the principles articulated by California courts concerning the public's First Amendment right of access to court records. Rule 2.550 provides: "Unless confidentiality is required by law, court records are presumed to be open." (Rule 2.550(c).) Rule 2.550 further provides that a court may order a record sealed "only if it expressly finds facts that establish: [¶] (1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is

---

[6] References to rules are to the California Rules of Court.

narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d).) An order sealing the record must specifically state the facts supporting those findings. (Rule 2.550(e)(1)(A).) While the findings may be set forth in cursory terms, "[i]f the trial court fails to make the required findings, the order is deficient and cannot support sealing." (*Overstock*, *supra*, 231 Cal.App.4th at p. 487.)

Rule 2.551 allows a party, members of the public, or the court on its own initiative to move to unseal a previously sealed record. (Rule 2.551(h)(2).) In determining whether to unseal a record, a court must consider the same criteria set forth in rule 2.550(c)–(e). (Rule 2.551(h)(4).) Express factual findings are not required, however, when ruling on a request to unseal. (Compare rule 2.551(h) with rule 2.550(d); *Overstock*, *supra*, 231 Cal.App.4th at p. 488.)

## C. Standard of Review

Challenges to a sealing order or an order denying a motion to unseal premised on a common law right of access are reviewed under the abuse of discretion standard. (*Overstock*, *supra*, 231 Cal.App.4th at p. 490.)

Courts are divided, however, on the standard of review applicable to challenges premised on the First Amendment right of access. (Compare *People v. Jackson* (2005) 128 Cal.App.4th 1009 (*Jackson*) and *Copley Press, Inc. v. Superior Court* (1998) 63 Cal.App.4th 367 [de novo review] with *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292 (*Providian*) and *McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974 [abuse of discretion standard].)

We summarized this split in *Overstock*, *supra*, 231 Cal.App.4th at pages 490–492: "In *Providian*, one of the early watershed cases applying the sealed records rules, the court reviewed an order *unsealing* documents, which

8

it characterized as the 'functional equivalent' of an order denying sealing. (*Providian*, *supra*, 96 Cal.App.4th at p. 302.) The court nevertheless addressed the standard of review both for orders sealing and unsealing records. (*Id*. at pp. 299–303.) Noting that an order sealing records is proper only if the trial court expressly finds facts that establish the five findings required by rule 2.550(d)(1)–(5), *Providian* concluded the first task in reviewing an order to seal is to 'examine the express findings of fact required by [the] rule . . . to determine if they are supported by substantial evidence.' (*Providian*, at p. 302.) Next, because the language of the rule is permissive (the 'court may order that a record be filed under seal' if the factual requisites are met (rule 2.550(d)), the appellate court must ask 'whether, in light of and on the basis of [the] findings, the trial court abused its discretion in ordering a record sealed.' (*Providian*, at p. 302.) As for an order to unseal, which differs from an order to seal because the trial court need not make express findings, *Providian* concluded the reviewing court examines the record for substantial evidence supporting the trial court's implied findings that the requirements for sealing are not met. (*Id*. at pp. 301–303.) [Fn. omitted.]

"However, in [*Jackson*, *supra*,] 128 Cal.App.4th [at pages] 1019–1020 . . . , the court took a different approach as to orders *sealing* court records, pointing out *Providian* actually dealt with an order unsealing records. *Jackson* concluded an order sealing records is subject to 'independent review' because it implicates First Amendment rights. [Fn. omitted.] (*Jackson*, at p. 1020; see *U.S. v. Doe* (2d Cir. 2009) 356 Fed. Appx. 488, 489 [distinguishing between orders sealing and unsealing records; 'where, as here, we review a district court decision *denying* sealing, the decision presents no First Amendment concerns, and we will affirm unless the district court "based its ruling on an erroneous view of the law or on a clearly

9

erroneous assessment of the evidence . . ." '].)  As to orders *unsealing* court records, the court considered *Providian*'s standard of review discussion 'arguably . . . persuasive.'  (*Jackson*, at p. 1020.)

"In *Oiye*[ *v. Fox*], the court declined to follow *Jackson*'s view on the standard of review applicable to orders sealing court records and adopted the approach laid out in *Providian*, stating it would ' "review the trial court's decision to order the documents sealed under the abuse of discretion standard, and any factual determinations made in connection with that decision will be upheld if they are supported by substantial evidence." '  (*Oiye*[ *v. Fox*] (2012)] 211 Cal.App.4th [1036,] 1067.)  *Oiye* distinguished *Jackson* as involving an uncontested record.  (*Oiye*, at p. 1067.)  We do not agree *Jackson* employed independent review because the record was uncontradicted.  Rather, it seems apparent the court did so because the sealed records rules are grounded in the First Amendment right of access."

Here, appellants are challenging an order unsealing court records.  On this point, *Jackson* indicated agreement with *Providian*'s analysis regarding the proper standard of review.  We agree.  Accordingly, we review the record for substantial evidence supporting the family court's order.

### D.  Authority of Family Court to Decide Motion to Unseal

Appellants first assert Judge Dabel exceeded his jurisdiction in granting the motion to unseal because he lacked authority to overrule Judge Davis's order denying the Attorney General's first motion or Judge Scott's original order sealing the records.  We disagree.

As a preliminary matter, Judge Dabel's order did not overrule Judge Davis's order.  Judge Davis did not rule on the merits of the Attorney General's motion to unseal.  Rather, he explained the court lacked jurisdiction because the motion to unseal records "must be sought from the

10

judge or court that entered the original sealing orders." The Attorney General, by refiling the motion to unseal in the family court, complied with Judge Davis's order—i.e., the Attorney General filed his motion with the "court that entered the original sealing orders."

Nor did Judge Dabel's order run afoul of Judge Scott's original sealing order. "As a general rule, a trial judge cannot overturn the order of another trial judge." (*Paul Blanco's Good Car Co. Auto Group v. Superior Court* (2020) 56 Cal.App.5th 86, 99.) "Fundamentally, it 'is founded on the inherent difference between a judge and a court and is designed to ensure the orderly administration of justice.' [Citation.] Because a superior court is a single entity comprised of member judges, ' "one member of that court cannot sit in review on the actions of another member of that same court." ' " (*Ibid.*) However, exceptions exist to this general rule. For example, the rule does not apply "when the record shows that the original judge is no longer 'available.' " (*Id.* at p. 100.) But "[u]navailability is not demonstrated, however, by the mere fact that the original judge was transferred to another department of the same court." (*Ibid.*) "Courts have also found an exception where the initial ruling was made through inadvertence, mistake, or fraud, or where new facts, evidence, or laws have arisen." (*Id.* at p. 101, fn. 6.)

Appellants argue these general principles apply to motions to unseal, citing *Wilson v. Science Applications Internat. Corp.* (1997) 52 Cal.App.4th 1025 and *Church of Scientology v. Armstrong* (1991) 232 Cal.App.3d 1060. In *Wilson*, the court addressed the ability of third parties to challenge an order sealing all or part of the record in a civil proceeding. (*Wilson*, at p. 1028.) The court concluded "a person seeking to vacate a sealing order which is no longer subject to direct review may do so by making a motion under Code of Civil Procedure section 1008, subdivision (a), and showing some new or

11

different fact, circumstance or law justifying vacation of the existing order. [Citations.] The motion must be heard by the trial judge who entered the sealing order [citation] and the moving party must present an explanation for the failure to bring such information to the court's attention earlier." (*Id.* at p. 1032.) However, *Wilson* was decided prior to *NBC Subsidiary*, *supra*, 20 Cal.4th 1178, and the subsequent legislative enactment of the sealed records rules.

More recently, our colleagues in the Fourth Appellate District decided *Nicholas*, *supra*, 186 Cal.App.4th 1566. In that matter, the family court issued five sealing orders during a highly contentious and public divorce. (*Id.* at pp. 1569–1571.) The matter was subsequently reassigned to a new judge "to determine all issues pertaining to the family court's files." (*Id.* at p. 1571.) The new judge issued various new sealing orders, which in relevant part unsealed certain documents and vacated the fifth sealing order issued by the prior judge. (*Id.* at pp. 1572, 1574.) On appeal, the husband argued the court lacked jurisdiction to reconsider or otherwise modify the fifth sealing order. (*Id.* at p. 1574.)

The appellate court rejected the husband's reasoning. First, the court concluded the husband's position "runs afoul of constitutional principles, California Supreme Court decisions, and judicial rules concerning the sealing and unsealing of court records." (*Nicholas*, *supra*, 186 Cal.App.4th at p. 1574.) It explained the strong presumption of public access to court records, which allowed for sealed records "only in limited circumstances, and only when they expressly identify the particular facts that support the existence of *NBC Subsidiary*'s constitutional standards." (*Id.* at p. 1575.) The court further explained, "Since orders to seal court records implicate the public's right of access under the First Amendment, they inherently are

12

subject to ongoing judicial scrutiny, including at the trial court level. 'Due to its temporary nature and its infringement upon the public right to know, a sealing order in a civil case is always subject to continuing review and modification, if not termination, upon changed circumstances.' " (*Ibid.*) The court noted sealing orders are " 'continuing in nature, directed at future events' " and " 'must be subject to adaptation as events may shape the need,' " and compared them to "a way station, not a final destination." (*Id.* at p. 1576.)

Second, the court "reject[ed the husband's] jurisdictional argument because it would eliminate the court's express authority to *unseal* records." (*Nicholas*, *supra*, 186 Cal.App.4th at p. 1577.) The court explained "rule 2.551(h)[ ] authorizes trial judges to issue orders to unseal records that previously have been sealed by prior court orders," and "[u]nsealing orders accomplish precisely what [the husband] contends judges should be barred from doing—revisiting preexisting sealing orders." (*Ibid.*) "[T]he power to unseal is a critical safeguard for the public's right to know." (*Ibid.*)

Finally, the court rejected the husband's argument that the new judge lacked authority to alter sealing orders issued by his predecessor in the same dissolution proceeding. The court noted this argument "ignores a (albeit lamentable) 'culture of rotation' in urban family law departments [citation], as well as the express authority of successor judges to control their own case files and to alter or amend orders issued by their predecessors in the same case." (*Nicholas*, *supra*, 186 Cal.App.4th at p. 1577.) The court explained, "Given the judiciary's ' "core power to decide controversies between parties," ' a trial court retains the authority to alter or amend its own rulings in the same case, whether made by the same judge or by his or her predecessor. Any other restriction ' "would directly and materially impair and defeat the

13

court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice." ' " (*Id.* at pp. 1577–1578.)  The court distinguished *Church of Scientology v. Armstrong*, *supra*, 232 Cal.App.3d 1060 on the basis that it was decided prior to *NBC Subsidiary*, which "precluded trial courts from sealing the records of civil proceedings absent noticed hearings and findings to justify such restrictions." (*Nicholas*, at p. 1578, citing *NBC Subsidiary*, *supra*, 20 Cal.4th at pp. 1181–1182.)  The court noted, unlike in *Church of Scientology*, "Parties no longer can stipulate . . . to seal certain records from public view." (*Nicholas*, at p. 1578.)

Appellants seek to distinguish *Nicholas* on the grounds that it addressed a trial judge's authority to modify a predecessor's rulings on his or her own motion and does not undermine the principle that one judge may not vacate another judge's ruling except in limited circumstances set forth in *Paul Blanco's Good Car Co. Auto Group v. Superior Court*, *supra*, 56 Cal.App.5th 86.  They argue nothing in decisional or statutory law challenges the general principle that one superior court judge cannot overrule another superior court judge.

We disagree with appellants' interpretation and find *Nicholas* persuasive.  Rule 2.551 specifically authorizes courts to consider motions to unseal and represents "a critical safeguard for the public's right to know." (*Nicholas*, *supra*, 186 Cal.App.4th at p. 1577.)  And, as explained by *Nicholas*, undermining successor judges' ability to control their own cases " ' "would directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice." ' " (*Id.* at pp. 1577–1578.)  Under appellants' interpretation, any judge handling a case which had been

14

reassigned would be hindered in his or her ability to efficiently manage the matter. Accordingly, we conclude Judge Dabel and the family court had authority to consider and rule on the Attorney General's motion to unseal.

## E. *Order Granting Motion to Unseal*

Appellants raise four main arguments challenging the family court's order granting the motion to unseal. Specifically, appellants contend the Attorney General failed to bring his motion to further the First Amendment right to public access, the Attorney General's articulated purpose in seeking the records does not support his unsealing motion, the factors set forth in rule 2.550 support keeping the records sealed, and the records at issue are not subject to the sealed records rules. We address each argument in turn.

### 1. *Attorney General's Right to Request the Records Be Unsealed*

Appellants assert the Attorney General's claimed public interest in the marital dissolution records—the regulation of public charities—is not a valid basis for seeking the records under the sealed records rules. Rather, they assert, the public access must relate to the public's interest in monitoring the courts. We disagree.

#### a. **Basis for Unsealing Records Under the Sealed Records Rules**

"Nearly all jurisdictions, including California, have long recognized a common law right of access to public documents, including court records." (*Overstock, supra*, 231 Cal.App.4th at p. 483.) This right "is effectuated through a presumption of access," which means "court records are 'open to the public unless they are specifically exempted from disclosure by statute or are protected by the court itself due to the necessity of confidentiality.' " (*Ibid.*)

California also has recognized "a First Amendment right of access to documents in civil litigation that are 'filed in court as a basis for

15

adjudication.' " (*Mercury Interactive, supra*, 158 Cal.App.4th at p. 89, quoting *NBC Subsidiary, supra*, 20 Cal.4th at p. 1208, fn. 25.)  In *NBC Subsidiary*, the California Supreme Court "addressed the outright closure of court proceedings and concluded the trial court infringed on First Amendment rights by barring the media from the courtroom in the absence of explicit findings of an overriding interest that was likely to be prejudiced and could not be protected by less restrictive means." (*Overstock, supra*, 231 Cal.App.4th at p. 484, citing *NBC Subsidiary*, at pp. 1222–1223.)  In finding a First Amendment right of access to those proceedings, the court explained, "Public access to civil proceedings serves to (i) demonstrate that justice is meted out fairly, thereby promoting public confidence in such governmental proceedings; (ii) provide a means by which citizens scrutinize and check the use and possible abuse of judicial power; and (iii) enhance the truthfinding function of the proceeding." (*NBC Subsidiary*, at p. 1219.)  The court additionally noted, "Numerous reviewing courts likewise have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication." (*Id.* at p. 1208, fn. 25.)  "Since *NBC Subsidiary*, the California Courts of Appeal have regularly employed a constitutional analysis in resolving disputes over public access to court documents." (*Overstock*, at p. 485.)

Based on *NBC Subsidiary*, "the Judicial Council in 2001 adopted two rules concerning the sealing of trial court records that are presently rules 2.550 and 2.551 of the California Rules of Court . . . . Those rules create a presumption of public access to some, but not all, court-filed documents. The sealed records rules 'do not apply to discovery motions and records filed or lodged in connection with discovery motions or proceedings.  However, the rules do apply to discovery materials that are used at trial or submitted as a

16

basis for adjudication of matters other than discovery motions or proceedings.' " (*Mercury Interactive, supra*, 158 Cal.App.4th at p. 68, fn. omitted.)

In *Overstock*, this court addressed whether " 'discovery materials . . . submitted as a basis for adjudication' " is limited to those materials relevant to the grounds on which a trial court ultimately rules or encompasses all relevant discovery materials submitted to a court in support of and in opposition to a pending motion. (*Overstock, supra*, 231 Cal.App.4th at p. 492.) After evaluating the plain language of rules 2.550 and 2.551, we concluded use of the word "submitted" addressed the parties' conduct and demonstrated the rules cannot be limited to merely those materials the court relied upon in deciding an issue. (*Overstock*, at pp. 494–495.) We further noted neither *NBC Subsidiary* nor the cases upon which it relied "suggest[ ] the constitutional right of access to court records is limited to discovery materials relevant to the ground or grounds on which a court ultimately rules." (*Overstock*, at p. 495.) Accordingly, we concluded a broader construction of the phrase " 'submitted as a basis for adjudication' " is appropriate. (*Id.* at p. 497.)

Appellants claim any public access must relate to the public's interest in monitoring the courts. This position, however, overlooks the "presumption of public access" created solely by submitting such documents as a basis for adjudication. (*Mercury Interactive, supra*, 158 Cal.App.4th at p. 68.) Neither case law nor the sealed records rules require parties to identify any other public interest. As discussed above, the sealed records rules apply to discovery materials "used at trial or submitted as a basis for adjudication." (Rule 2.550(a)(3).) The only restriction on access—even under a narrow interpretation of rule 2.550—is its relevance to an issue being adjudicated.

17

(*Ibid.*; *Overstock*, at pp. 493–494; accord *Brown & Williamson Tobacco Corp. v. F.T.C.* (6th Cir. 1983) 710 F.2d 1165, 1181 [blanket sealing order preventing the public from "ascertaining what evidence and records the District Court and this Court have relied upon in reaching our decisions" was improper].)

By focusing on the rationale of the Attorney General in seeking the documents, appellants miss the mark. Access, rather than confidentiality, is the default. (Rule 2.550(c).) And the right of access is set forth not only in the sealed records rules but also in the California Constitution, "which provides: 'The people have the right of access to information concerning the conduct of the people's business . . . .' "[7] (*Overstock*, *supra*, 231 Cal.App.4th at p. 495, citing Cal. Const. art I, § 3, subd. (b)(1).) Accordingly, the Attorney General was entitled to move to unseal materials that were used at trial or submitted as a basis for adjudication under the sealed records rules.

### b. Attorney General's Ability to Bring Motion on Behalf of the Public

By challenging the validity of the Attorney General's interest in the records at issue, appellants essentially challenge the Attorney General's standing—i.e., whether the Attorney General properly brought his motion to unseal on behalf of the public. (See rule 2.551(h)(2) ["A . . . member of the public may move, apply, or petition . . . to unseal a record."].) Here, the Attorney General's interest in bringing the motion on behalf of the public was to evaluate alleged self-dealing and diversion of charitable funds. We are unaware of any authority suggesting the Attorney General's rationale cannot

---

[7] To the extent the basis for seeking access is relevant, it arises as part of the court's analysis as to whether "[t]here exists an overriding interest that overcomes the right of public access to the record." (Rule 2.550(d)(1).) We address that issue in part II.E.2., *post*.

support his motion on behalf of the public, and it is similar to those asserted in other matters. (See, e.g., *Mercury Interactive*, *supra*, 158 Cal.App.4th at p. 70 [public interest in alleged stock option backdating]; *Overstock*, *supra*, 231 Cal.App.4th at pp. 482–483 [challenging motion to seal transactional materials related to alleged stock price suppression].)

Appellants next argue the Attorney General only regulates nonprofit organizations, and Newton Center, the nonprofit at issue, was neither a party to the marital dissolution proceedings nor "owned" by the parties to the dissolution proceedings. Appellants thus assert the dissolution proceedings involved interests that are beyond the purview of the Attorney General.

However, the applicable statutes governing nonprofit organizations (Gov. Code, § 12580 et seq.) are not limited to the nonprofit organizations themselves. Rather, the article "applies to all charitable corporations, unincorporated associations, trustees, and other legal entities holding property for charitable purposes, commercial fundraisers for charitable purposes, fundraising counsel for charitable purposes, and commercial coventurers, over which the state or the Attorney General has enforcement or supervisory powers." (Gov. Code, § 12581; accord *People v. Orange County Charitable Services* (1999) 73 Cal.App.4th 1054, 1075 [Attorney General also oversees "any individual, corporation, or legal entity who for compensation solicits funds in California for charitable purposes or, as a result of a solicitation, receives or controls the funds"].) Trustees are defined, in part, as "any individual, group of individuals, corporation, unincorporated association, or other legal entity holding property in trust pursuant to any charitable trust." (Gov. Code, § 12582.) And the Attorney General is authorized to "investigate transactions and relationships of corporations and trustees subject to this article for the purpose of ascertaining whether or not

19

the purposes of the corporation or trust are being carried out in accordance with the terms and provisions of the articles of incorporation or other instrument." (Gov. Code, § 12588.)

Here, appellants arguably fall within the purview of the Government Code based on their role in operating Newton Center. While they contend a nonprofit cannot be "owned," the record indicates Newton Center was formed by Soncino and the Tamirs, they were all named directors of the nonprofit, and no board of director meetings were ever conducted, and it operated within the broader structure of the family businesses. Accordingly, substantial evidence indicates the Attorney General properly brought the motion on behalf of the public.

### 2. *Application of the Sealed Records Rules*

Rule 2.550(d) sets forth five factors for courts to consider when either sealing or unsealing records. While express findings must be made to seal records, no express finding need be made when a court unseals records. (*Providian*, *supra*, 96 Cal.App.4th at p. 302; *Overstock*, *supra*, 231 Cal.App.4th at p. 487.)

Appellants contend they have an overriding privacy interest in their financial and personal information. In response, the Attorney General contends compensation and expenses inuring to a charity's founding directors are not constitutionally protected.

Undoubtedly, individuals have a privacy interest in their financial information. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656.) However, "the question in the context of sealing is whether the state-recognized privacy interest in financial information overrides the federal constitutional right of access to court records. This is necessarily a balancing inquiry, dependent on the facts and circumstances of the particular case."

20

(*Overstock*, *supra*, 231 Cal.App.4th at p. 504.) To this end, we find *In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045 (*Burkle*), instructive. There, the court evaluated the validity of Family Code section 2024.6, which required, at the request of either party, the sealing of any pleading in a divorce case listing information about the financial assets and liabilities of the parties and providing the location or identifying information about such assets and liabilities. (*Burkle*, at pp. 1052–1070.) The court in *Burkle* looked to both historical and utility considerations to conclude divorce proceedings are presumptively open. (*Id.* at pp. 1056–1058, 1061.) The court then sought to evaluate the right to financial privacy in the context of the First Amendment right to access. In doing so, the court emphasized "state constitutional privacy rights do not automatically 'trump' the First Amendment right of access under the United States Constitution." (*Burkle*, at p. 1059.) Rather, "the factors unique to marital dissolutions are weighed in the balancing process that necessarily occurs in a decision whether to close divorce proceedings or to seal records that are presumptively open." (*Id.* at p. 1061.)

In evaluating this balance, the court struck down the statute, concluding it was not narrowly tailored to protect parties from economic crimes. (*Burkle*, *supra*, 135 Cal.App.4th at pp. 1066, 1069–1070.) The court drew a distinction between highly sensitive identifying information, such as account and Social Security numbers or asset locations, that can facilitate criminal activity, and more general information, such as the mere existence and stated value of an asset or liability. (*Id.* at pp. 1065–1066.) *Burkle* thus indicated the general right to financial privacy, without more, does not preempt the public's right of access.

21

Appellants argue their right to financial privacy overrides the right of public access because the materials at issue were "taken from Yoram Tamir's desk" and encompassed information concerning appellants' " 'employment, compensation, salary, and expenses.' "  However, apart from referencing their general right to financial privacy, appellants do not identify any specific prejudice or privacy concerns regarding disclosure of these materials that would override the right of access.[8]  They merely contend the unsealing order would constitute "the kind of ' "government snooping" ' and ' "overbroad collection and retention of unnecessary information" ' that the voters sought to guard against when they adopted the California Constitution's privacy clause."  They argue their personal information "has nothing to do with the Attorney General's supervision of public charities."  However, as discussed above, the Attorney General's supervision of public charities encompasses not only the nonprofit but also "unincorporated associations, trustees, and other legal entities holding property for charitable purposes, commercial fundraisers for charitable purposes, fundraising counsel for charitable purposes, and commercial coventurers."  (Gov. Code, § 12581.)

---

[8] Appellants cite *Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 625, to assert an individual's overriding privacy interest in their financial information supports sealing.  However, in *Cassidy*, the court noted there was an overriding interest because the documents "were not the subject of any adjudication in this case, were placed in the public record without [a third party's] consent, and thus there is *no* right to public access to these private documents." (*Ibid.*)  Here, the record does not reflect comparable facts.  Likewise, appellants' reliance on *Burkle* is inapposite.  While *Burkle* noted the information regarding assets and liabilities is subject to privacy rights, it concluded those rights did not trump the First Amendment right of access. (*Burkle*, *supra*, 135 Cal.App.4th 1045 at p. 1059.)

Appellants' reasoning, if adopted by this court, would essentially mandate the sealing of *all* financial records filed in a court proceeding. And, as explained in *Burkle*, such a sweeping rule would run counter to the First Amendment right of access. (*Burkle*, *supra*, 135 Cal.App.4th at pp. 1059, 1061.) Moreover, appellants' contention that their financial information is unrelated to the Attorney General's role in supervising public charities is misleading. Appellants do not dispute they received funds from Newton Center. Nor do they dispute they served as directors of Newton Center. And the Government Code authorizes the Attorney General to obtain records— including financial records—from such individuals. (See, e.g., Gov. Code, § 12588 [authorizing Attorney General to "require any agent, trustee, fiduciary, beneficiary, institution, association, or corporation, or other person to appear, at a named time and place, in the county designated by the Attorney General, where the person resides or is found, to give information under oath and to produce books, memoranda, papers, documents of title, and evidence of assets, liabilities, receipts, or disbursements in the possession or control of the person ordered to appear"].) Likewise, the Internal Revenue Service requires Newton Center to disclose any compensation paid to a charity's directors. (See IRS Form 990, Instructions for Form 990 (2020) pp. 25, 26 ["Form 990, Part VII, requires the listing of the organization's current or former officers, directors, trustees . . . and reporting of certain compensation information related to such persons."; "Organizations must report compensation from themselves and from related organizations"].) Accordingly, substantial evidence supports the family court's decision to unseal appellants' compensation and financial records.[9]

_____

[9] Because we conclude substantial evidence supports the finding that appellants failed to demonstrate an overriding interest that overcomes the right of public access and supports sealing of the record, we need not address

### 3. *Use of the Documents Submitted Under Seal*

Finally, appellants assert the family court erred in unsealing records from the divorce proceedings because those documents "were neither used at trial nor submitted as a basis for adjudication of nondiscovery matters." Specifically, appellants note no records were sealed in connection with trial. They further contend the sealed records were not submitted as a basis for adjudication but rather in connection with "an ancillary issue regarding [Yoram's] belated attempt to disqualify the judge *pro tem*" and a "related motion for sanctions" against Yoram for his motion to disqualify. In response, the Attorney General states "because the sealed records were never identified, Appellants' argument that they do not constitute discovery and were not submitted for adjudication cannot be substantiated."

The Attorney General fails to address appellants' main point—namely, that the motions for which the documents were submitted and sealed were neither related to the underlying matter's adjudication nor used at trial.

As explained by the court in *Mercury Interactive*, "We conclude that the first sentence of footnote 25 [in *NBC Subsidiary*, *supra*, 20 Cal.4th at page 1208,] meant that a number of appellate courts had found a First Amendment right of access to documents filed in a civil case where they were submitted to the trial court for its consideration in deciding a substantive matter in that action. (See Black's Law Dict. (8th ed. 2004) p. 45, col. 1 [defining 'adjudication' as '[t]he legal process of resolving a dispute; the process of judicially deciding a case']; see also Merriam-Webster's Collegiate

---

the other factors set forth in rule 2.550(d). We also do not opine on whether the Attorney General could have compelled production of such records in its civil action, *People v. Newton Center* (Super. Ct. San Mateo County, No. 19CIV02188).

Dictionary (10th ed. 2001) p. 95 [defining 'basis' as 'the principal component of something . . . something on which something else is established or based'].)" (*Mercury Interactive, supra*, 158 Cal.App.4th at p. 91.)

Here, the record indicates one motion to seal was in connection with a motion for sanctions. The other motion to seal does not identify the related motion for which it was submitted, but appears to be related to Celine's trial brief and a request for judicial notice. While the Attorney General takes issue with the court's failure to identify the specific documents at issue, there is no attempt by the Attorney General to identify any sealing order connected with the matter's adjudication. However, at least two documents identified by the Attorney General in his motion to unseal appear related to the matter's adjudication: (1) the trial brief of Soncino "re Tax Consequences" and accompanying exhibits, and (2) the trial brief of Celine "re Allocation and Valuation of the Community's Interest in the Family Business" and accompanying exhibits. Unfortunately, the record submitted by the parties to this court does not provide further insight into the issues giving rise to the motions to seal or the documents under seal. Accordingly, we find it appropriate to reverse the family court's order granting the Attorney General's motion to unseal, and remand to the family court to assess, in the first instance, whether the documents subject to the motions to unseal were used in trial or submitted as a basis for adjudication.

## F. *Order Setting Aside the Protective Orders*

Finally, appellants argue the family court erred by terminating the protective orders filed on December 12, 2011 and September 17, 2012. They contend the documents at issue were discovery materials that were neither used at trial nor submitted as a basis for adjudication, and merely deemed confidential pursuant to the terms of the protective orders. The Attorney

25

General does not respond to this argument or otherwise assert the family court properly set aside the protective orders.

The Attorney General's motion to unseal was based on the factors set forth in the sealed records rules. The family court granted the motion and set aside the protective orders by "adopt[ing] the People's argument and analysis for purposes of this motion." However, the sealed records rules only "apply to records sealed or proposed to be sealed by court order." (Rule 2.550(a)(1).) And the protective orders do not constitute "records sealed or proposed to be sealed." Moreover, a general exchange of documents pursuant to a protective order is not encompassed by the sealed records rules because such an exchange does not amount to those materials being "used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." (Rule 2.550(a)(3).) Accordingly, the family court erred in setting aside the protective orders.

## III.  DISPOSITION

The order granting the motion to unseal is reversed, and the matter is remanded to the family court to determine whether the sealed documents were "used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." The parties are to bear their own costs on appeal. (Rule 8.278(a)(3).)

26

MARGULIES, J.


WE CONCUR:


HUMES, P. J.


SANCHEZ, J.


A161782
*In re Marriage of Tamir*

Filed 12/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Marriage of CELINE and YORAM TAMIR | A161782 |
| CELINE TAMIR et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> YORAM TAMIR, <br><br> Defendant and Respondent; <br><br><br> THE PEOPLE ex rel., ROB BONTA, as Attorney General, etc., <br><br> Intervener and Respondent. | (San Mateo County Super Ct. No. FAM0113496) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on November 29, 2021, was not certified for publication in the Official Reports.  After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

There is no change in the judgment.

Dated:

_____
MARGULIES, ACTING P.J.

Trial Court:      San Mateo County Superior Court

Trial Judge:      Hon. Sean P. Dabel

Counsel:

Ponist Law Group, Sean E. Ponist; Wilson Elser Moskowitz Edelman & Dicker, Marty Brian Ready; Law Office of Alan S. Yockelson and Alan S. Yockelson for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Rob Bonta, Attorney General, Tania M. Ibanez, Assistant Attorney General, Elizabeth S. Kim, Diane P. Cragg and Caitlin W. Noble, Deputy Attorneys General, for Intervener and Respondent.