Filed 4/27/22  Nicolino v. Rey CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| VENUS NICOLINO, | B307752 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STRO02579) |
| v. | |
| SAMANTHA REY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joshua D. Wayser, Judge.  Affirmed.

Gusdorff Law and Janet Gusdorff; Robert Freund Law and Robert S. Freund for Plaintiff and Appellant.

Lefkowitz Law and Jamie Lefkowitz for Defendant and Respondent.

Petitioner and appellant Venus Nicolino (Nicolino) sought a civil harassment restraining order against her erstwhile personal assistant and personal manager, respondent Samantha Rey (Rey). Nicolino accused Rey of, among other things, being obsessed with Nicolino and accessing Nicolino's electronic accounts after her employment ended. In response, Rey filed a declaration describing her employment with Nicolino, including assertions related to Nicolino's mental health and marriage. The trial court denied Nicolino's request for a restraining order—a ruling Nicolino never appealed. But Nicolino subsequently filed a motion to seal, essentially in toto, the declaration Rey filed in opposition to the restraining order request and Rey filed a motion for attorney fees for prevailing against Nicolino. The trial court denied the motion to seal and granted the motion for attorney fees, and we consider the correctness of both of these rulings.

## I. BACKGROUND

### A. *Background and Petition*

Rey began working for Nicolino, a Doctor of Clinical Psychology who pursued a career in television and media, in May 2017. Approximately three years later, in February 2020, her employment ended. Rey and Nicolino disagree about the circumstances under which she left her employment, with Rey contending she quit, and Nicolino contending she terminated Rey's employment.

Some three months after the professional relationship ended, Nicolino sought a civil harassment restraining order against Rey. Nicolino's petition for the order asserted sundry alleged wrongs: Rey verbally abused her during the majority of Rey's employment, Rey learned personal information about

2

Nicolino and threatened to use the information against her, and Rey violated Nicolino's privacy by accessing her office, belongings, and phone without permission. Nicolino further contended that after Rey stopped working for her, Rey continued to harass her, stalked her once, and accessed digital accounts and files belonging to Nicolino.

B.     *The Temporary Restraining Order and Aftermath*

The trial court issued a temporary restraining order against Rey pending the hearing on Nicolino's petition. The temporary restraining order protected Nicolino, her husband, and three minors.

Prior to the hearing on the petition for a restraining order, Nicolino filed an application for an order to show cause re contempt. In support of the application, Nicolino filed a declaration asserting Rey accessed her computer and uploaded a new document to her production company's Google Docs account, in violation of the temporary restraining order. Nicolino also alleged Rey obsessed over her relationship with Nicolino and attached several notes she previously received from Rey to support assertions that Rey caused Nicolino to fear for her safety. Nicolino asserted that, as a Doctor of Clinical Psychology, she "know[s]" Rey's behavior is "Borderline Personality Disorder with Anger and Behavioral Instability."

C.     *Rey's Response and Declaration*

Rey filed a form response opposing the request for a restraining order. In support thereof, Rey filed a 22 page declaration describing her dealings with Nicolino. The declaration attached approximately seventy pages of exhibits.

3

In her declaration, Rey described her employment with Nicolino, including the tasks she performed as Nicolino's personal assistant. She described Nicolino as a "very, very difficult boss." Rey contended Nicolino's declaration was permeated by falsehoods and provided what she referred to as background information intended to establish Nicolino was not credible and had a motive to lie about Rey. Among this information were assertions that Nicolino screamed at Rey regularly, was emotionally volatile, psychologically abused Rey, and involved Rey in intimate aspects of her life. In support of the last point, Rey declared Nicolino had repeatedly threatened to harm herself and had enlisted Rey's help in facilitating Nicolino's alleged extramarital affairs.

Rey's declaration also described Nicolino's attempts to convince her to sign a non-disclosure agreement after her employment ended. In doing so, she described and attached a cease and desist letter she received from counsel for Nicolino that claimed Rey violated the Computer Fraud and Abuse Act (adding that violations may result in life imprisonment) and demanded Rey sign a confidentiality agreement with a $200,000 liquidated damages clause. Rey also explained Nicolino had filed another lawsuit against her after requesting the restraining order and attached a copy of the complaint in that action.

The declaration itself incorporated images of communications between Nicolino and Rey to illustrate Rey's contentions. The exhibits to the declaration included, among other things, many text conversations between Rey and Nicolino, and some photographs depicting the latter.

*D.      Hearing on the Petition*

The trial court held a hearing on the petition over the course of two days.  The substance of the witnesses' testimony is largely irrelevant for our purposes in this appeal.  We describe only the aspects of the hearing that bear upon the matters at issue, and most of these pertain to the trial court's remarks and its ruling.

During the course of the hearing, the trial court referred to Rey's declaration and its exhibits numerous times.  The court stated more than once that it had read the papers, and specifically said it had "read every text message."  Early in the hearing, Nicolino argued Rey's actions in the litigation—which at that point amounted to the filing of her declaration—underscored the need for a restraining order because of the way Rey used Nicolino's confidential information.  In response, the trial court said it was "such a tricky issue" with "First Amendment issues and . . . litigation privilege issues."  The court noted there were issues about "course of conduct" and mused that it might not reach the First Amendment or the litigation privilege because "[i]t's all either part of the pattern of a course of conduct, and it's all sort of lined up and it's reflective of something, or it doesn't."

During testimony regarding some of the assertions in Rey's declaration, the trial court urged the parties to touch upon the issues generally, without getting into unnecessary details.  In general remarks, the court stated:  "Look, I need to be clear about something so the record can go transparent on an issue.  I have read each and every piece of paper in this case.  As a result of having done that, I understand the subject matter of the issues.  I am exercising my discretion because I do not need to further hear about it because I understand it and it wouldn't be appropriate,

5

under the circumstances, to further inquire about it because I understand it. And the situation is difficult enough as is that I wish to just keep the record limited in that respect because I don't need any further information on that subject matter. I consider it not necessary for today's purposes."

The court adopted largely the same posture during specific lines of questioning. When Nicolino was asked about alleged threats of self harm, the trial court noted it wanted to "try to avoid the intimate" details and said "[i]f I don't need to know about it, I don't need to know about it; but you may certainly ask questions about it." Later, when Rey asked Nicolino whether she told Rey about claimed extramarital relationships with other men, Nicolino objected. The court allowed counsel to flesh "this" out only a little further, believing it was fair to ask whether the information that Nicolino alleged Rey weaponized was information Nicolino voluntarily gave her.[1]

At the end of the first day of the hearing, Nicolino asked the court to consider whether "some of the more colorful information" in Rey's declaration should be excluded from the public record until the court issued a ruling or, failing that, should be sealed because the information was irrelevant to the

---

[1] At another point, Nicolino asked the court to clarify why alleged relationships with other men were relevant to the issues before the court. The court responded, "[I]t's the heart of the issue . . . . this case . . . does center around . . . whether the information was weaponized or not. And then I have to figure out, if that information was weaponized, does that meet the standard?" The court also overruled Nicolino's objection to a question about whether Rey considered telling Nicolino's husband about the alleged affairs because they were "right at the heart of it."

6

issues.  The court explained its view of the issue on the record: "[I]t's a rabbit hole for me, and I prefer not to go down rabbit holes because of the First Amendment issues and litigation privilege issues.  [¶] . . . [¶]  I thought about it, and . . . I think . . . right now you would have to bring an application to file it under seal.  That's the easiest answer.  But I think the answer is it's tricky for me under the case law to rely on litigation content, generally . . . .  [¶]  And it's a very complicated thing to have to think about because . . . the pleadings were very personal and information was shared.  And it was done with strategy and with thought.  And I'm careful about that because I have to be careful.  I don't know that I could touch that right now.  But I understand your argument."  The court acknowledged that Nicolino believed "her absolute wors[t] nightmare has happened" but recognized that must be balanced against rights of free speech and access.

Nicolino asked if she could have the opportunity to file an application to seal before the declaration was placed in the public record.  The court noted, and Rey confirmed, that the declaration had already been filed and was thus already part of the public record.  The trial court then said, "I can't touch it without an application to seal."

The court took the matter under submission and issued a minute order denying the petition for a restraining order.  The court's order recognized the parties "had a close professional and personal relationship for several years" and stated that "[c]ertain of [r]espondent's conduct during that time was questionable, but her conduct ultimately did not rise to the level of harassment that is required for a [Civil Procedure] section 527.6 injunction to issue."

*E.    Subsequent Motions*
*1.    Nicolino's motion to seal*

Approximately one month after the trial court's ruling, Nicolino filed a motion to seal Rey's declaration. The version of the declaration as proposed to be sealed redacted essentially the entirety of Rey's declaration and all of its exhibits. More specifically, the proposed redacted version of Rey's declaration left visible only the caption page, the footer on each page of the declaration reflecting the page number and the identity of the document, Rey's averment under penalty of perjury that her statements are true and correct, and the proof of service. It redacted the entirety of every exhibit, leaving visible only page numbers and exhibit cover sheets.

The sealing motion argued there was an overriding interest in protecting Nicolino's private and confidential information and contended the declaration included "graphic, detailed, malicious, and false allegations and images regarding highly sensitive, potentially embarrassing information about [Nicolino] and her family, and . . . confidential conversations related to [Nicolino's] medical history." Nicolino further contended none of the information she sought to seal addressed any of the elements relevant to the trial court's ruling on the restraining order. Nicolino argued her overriding interest in her privacy would be prejudiced if the record were not sealed, and she represented her request to seal the declaration was narrowly tailored. In a footnote, she requested an opportunity to resubmit the motion and requested "guidance from the Court" if the court were not inclined to grant the requested relief.

Nicolino's attorney submitted a declaration in support of the motion to seal. The declaration asserted Nicolino applied for

a temporary restraining order in part because Rey told third parties she possessed personal, confidential, and sensitive information about Nicolino and Nicolino was worried Rey would use that information maliciously. Nicolino's attorney later submitted a supplemental declaration claiming the trial court repeatedly sustained her objections to Rey's "attempts to introduce the irrelevant accusations in the Rey Declaration" throughout the two day hearing on the request for a restraining order.

### 2. Rey's motion for attorney fees

Rey filed a motion for attorney fees, seeking fees as the prevailing party under Code of Civil Procedure section 527.6. Rey sought $36,362.50 in fees and $1,564.43 in costs.

Nicolino opposed the motion for fees arguing the trial court should deny the motion because (1) the litigation would have been unnecessary if Rey had agreed to sign a non-disclosure agreement after her employment ended, and (2) Rey requested fees unrelated to the Code of Civil Procedure section 527.6 petition. On the second point, Nicolino specifically argued the court should deny Rey approximately $4,000 in fees incurred in connection with Nicolino's motion to seal because the motion was an ancillary post-judgment motion. Nicolino did not specifically address any other requested fees in her opposition.

### 3. The hearing on the sealing and fees motions

The trial court held a hearing on the motions to seal and for attorney fees. On the motion for attorney fees, Nicolino's attorney argued fees were not warranted because the case was closely contested. In some contrast, the court explained it

9

believed there were many complications in the case itself, including some related to Nicolino's wealth, her cease and desist letter, and Rey's background.

Nicolino, who was present at the hearing, wanted to read a statement to the court. She interrupted the court while the court was explaining its concern about her request, given the pendency of other litigation involving the same parties. The court ultimately determined it did not need to hear Nicolino's statement, noting in part, "I appreciate that she has a different perspective and wants me to hear it, but we don't --" Nicolino interrupted again, stating she did not have a different perspective, and saying it was "just a statement." The court then said the following:

"Dr. Nicolino, you're like a spoiled child. You . . . you let people in on your life, and then you get called on it because you sent an inappropriate letter that was heavy-handed and ham-fisted, when you should have just called a friend and said there was a misunderstanding." Nicolino protested, saying that was untrue and disagreeing with the court's statement that she had her day in court. The court then added: "You are your own worst enemy. You can't control yourself. You breached boundaries. You shared information. You sued someone. They called you on it. [¶] . . . [¶] And you're getting the results. [¶] . . . [¶] I had a rational explanation, which I found persuasive, of what had happened, and you can't seem to understand that, but I understood it. And you're stuck on being the victim. I don't think you're the victim here." Nicolino interjected many times during the these remarks by the court, and the court ultimately deemed the matter submitted.

The trial court later issued a minute order denying the motion to seal and granting the motion for attorney fees. As to the motion to seal, the court found Nicolino's request overbroad and not narrowly tailored because she sought to seal the entirety of Rey's declaration. It noted there were two other pending civil matters brought by Nicolino and her production company against Rey, which related to the conduct alleged in the restraining order proceedings, and the court thought it would be imprudent to restrict or redact portions of the record in this case under the circumstances. The court further found Nicolino's declaration provided an insufficient basis to justify the sealing.

As to the motion for attorney fees, the court found Rey was the prevailing party and opted to award fees under the statute in an exercise of its discretion. The court explained Nicolino made serious personal allegations against Rey, Rey fairly defended against the allegations, Nicolino had the ability to pay the fees, and Rey's counsel did "an outstanding job" of protecting his client. The court found counsel's hourly rate ($550) was within the range of similarly skilled litigators and took no general issue with counsel's billing records. The court deducted a total of 1.4 hours of time spent on collateral issues and other litigation between the parties and awarded Rey a total of $37,139.01 in fees.

## II. DISCUSSION

The trial court did not err in denying the motion to seal because Nicolino did not narrowly tailor her request for sealing. Instead, Nicolino asked the court to seal the entire substance of Rey's declaration, which included, among other things, Rey's general description of her employment with Nicolino and

11

statements to which Nicolino could have no legitimate privacy objection.

The trial court's order awarding Rey attorney fees also does not warrant reversal. Though the record reflects the court's patience was wearing thin with Nicolino's interruptions at the pertinent hearing, our review of the entire record leaves us satisfied that the court's order was an appropriate exercise of discretion. Nicolino's specific challenges to certain awarded fees fail because the fees were either authorized or un-objected-to below.

### A. The Trial Court Did Not Err in Declining to Seal Rey's Declaration

California courts recognize a common law right of access to public documents, including court records. (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 483 (*Overstock*).) Court records are presumed to be "'open to the public unless they are specifically exempted from disclosure by statute or are protected by the court itself due to the necessity of confidentiality.' [Citations.]" (*Ibid.*)

California law also recognizes a First Amendment right of access to court proceedings and documents. (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1208, fn. 25 (*NBC*); *Overstock*, *supra*, 231 Cal.App.4th at 484; *In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, 1575 (*Nicholas*).) "A strong presumption exists in favor of public access to court records in ordinary civil trials. [Citation.] That is because 'the public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in

12

ordinary civil cases.' [Citation.]" (*Nicholas*, *supra*, 186 Cal.App.4th at 1575.)

California Rules of Court, rules 2.550 and 2.551 set standards to further the right of access to court records. Rule 2.550 provides that "[u]nless confidentiality is required by law, court records are presumed to be open." (Cal. Rules of Court, rule 2.550(c).) Rule 2.550 further provides a court may order a record sealed "only if it expressly finds facts that establish: [¶] (1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Cal. Rules of Court, rule 2.550(d).)

"California courts have taken varying approaches to the standard of review" of an order granting or denying a motion to seal court records, depending on whether the trial court sealed records, refused to seal records, or unsealed records. (*Overstock*, *supra*, 231 Cal.App.4th at 490.) When reviewing an order refusing to seal (or an order unsealing) records, the reviewing court evaluates whether the sealed records rules apply de novo and, if so, determines "whether substantial evidence supports the trial court's express or implied findings that the requirements for sealing are not met." (*Id.* at 492; see *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1020; *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 302-303.)

We thus look first to the applicability of the sealed records rules, which generally apply to "records sealed or proposed to be sealed by court order." (Cal. Rules of Court, rule 2.550(a)(1).)

13

Nicolino argues Rey's declaration is not subject to the rules because "irrelevant discovery materials or materials as to which evidentiary objections are sustained[ ] are not 'submitted as a basis for adjudication' and thus are not within the ambit of the constitutional right of access and, concomitantly, not subject to the sealed records rules." (*Overstock*, *supra*, 231 Cal.App.4th at 492.) In so arguing, Nicolino ignores the fact that neither the information in Rey's declaration nor the exhibits attached thereto were obtained through the discovery process. The exception, which by its terms is limited to "discovery materials," does not apply. (See Cal. Rules of Court, rules 2.550(a)(2), (3).)

We next turn to whether substantial evidence supports the trial court's denial of the motion, which was predicated on three independently sufficient reasons: (1) Nicolino's request was overly broad and not narrowly tailored; (2) the declaration in support of the sealing motion did not provide a sufficient basis to justify sealing; and (3) it would be imprudent to seal the declaration given the pendency of other related (in the colloquial sense) actions between Nicolino, her production company, and Rey.

Substantial evidence supports the trial court's determination that Nicolino's sealing proposal was not narrowly tailored—indeed, quite the opposite: Nicolino proposed to redact the entire substance of Rey's declaration. Even if Nicolino's complaints about the contents of Rey's declaration were justified, this level of redaction is plainly not narrowly tailored. Because rule 2.550 of the California Rules of Court requires a court to find facts to establish all five listed factors, including that the proposed sealing is narrowly tailored, the lack of narrow tailoring suffices to affirm the trial court's ruling and we need not discuss

14

the substantial evidence supporting the trial court's conclusion that the declaration submitted in support of the sealing motion was deficient.

Nicolino disagrees, primarily on the ground, which we have already rejected, that she was not required to narrowly tailor her request because the sealed records rules do not apply. She also contends her request was narrowly tailored because Rey "weaved her irrelevant vitriol through the pleading" such that redacting the entire declaration was necessary. Nicolino's specific examples of the "irrelevant vitriol," however, begin with a statement on page four of Rey's declaration. At a bare minimum, the first page of Rey's declaration appears both devoid of any so-called vitriol and relevant to the proceedings: the contents include Rey's general description of her employment with Nicolino. Nicolino also argues the trial court should have permitted her to resubmit a more narrowly tailored version of a request to seal. But that is too little too late. It was Nicolino's burden to present the court with a narrowly tailored request and she did not do so.

Nicolino also contends the trial court had the inherent power to strike a "document containing disrespectful, scandalous, or abusive language directed against the courts, officials, or litigants, or to take such other action as the circumstances may require" (*Warner v. Warner* (1955) 135 Cal.App.2d 302, 304), and the court abused its discretion by failing to recognize it had such power. Assuming without deciding that the language in Rey's declaration rises to the level of "disrespectful, scandalous, or abusive," we conclude the record does not affirmatively demonstrate the trial court was unaware of its discretion.

Nicolino points to the trial court's statement that the court could not touch the declaration without a motion to seal as evidence it did not understand its discretion. In doing so, Nicolino ignores the rest of the trial court's remarks on the issue. Earlier in the same discussion, the trial court expressed its belief that the issue of sealing was complicated and stated Nicolino filing an application to file under seal was "the easiest answer." The court's subsequent statement that it could not touch the declaration without an application to seal can be understood as the court affirming its prior conclusion that an application was the "easiest" approach and informing Nicolino she should file an application. By determining this was the "easiest" approach, the court was implicitly recognizing there were other approaches available, such as an exercise of its inherent power.

Even if we agreed, however, with Nicolino's contention that the trial court was unaware of its discretion, the record amply demonstrates the court would not have exercised that discretion. At the hearing, Nicolino objected to questions that delved into the more sensitive topics the Rey declaration addressed. The court cautioned Rey to address the topics generally, rather than by delving into the details, but it also indicated it wanted to hear testimony on the issues. Crucially, the trial court expressly addressed the reason for this on the record, stating the court had read all of the filings and was exercising its discretion to limit testimony on certain topics because the court understood the subject matter of the issues and "the situation is difficult enough as is that I wish to just keep the record limited in that respect because I don't need any further information on that subject matter." The trial court stated the issues were relevant to its determination and limited testimony precisely because it had

16

read the contents of the documents, including Rey's declaration. There is no reasonable probability it would have stricken Rey's declaration if it had known it had the discretion to do so.

> ### B. The Trial Court's Attorney Fees Award Is Not an Abuse of Discretion

"'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"'—meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) Nicolino mounts two challenges to the trial court's attorney fees award. First, she argues the trial court's fee award is infected by partiality, i.e., by the court's asserted animus against her. Second, she argues that the trial court erred by granting Rey fees for certain tasks performed by her attorney. Neither argument is meritorious.

Nicolino's first argument, based on a smattering of excerpts from the record, is that the trial court awarded Rey attorney fees because it was partial to Rey and/or prejudiced against Nicolino. Specifically, Nicolino complains that the trial judge characterized Rey as Nicolino's "friend," expressed an interest in Nicolino's financial status and allowed Nicolino's financial status to affect its decision, made assumptions about Rey's status, and lost his temper at Nicolino "unprovoked." These arguments do not establish the trial court abused its discretion in awarding Rey fees.

First, the record contains sufficient evidence from which the trial court could reasonably conclude Rey and Nicolino were indeed, at one point, friends. Rey so stated in her declaration,

17

and Nicolino referred to Rey as her "friend" in a text message that was admitted as an exhibit. Rey also testified at the hearing that she and Nicolino had been close friends at one point.

Second, the trial court inquired into Nicolino's financial status during the hearing on the restraining order—not in connection with the attorney fee motion—to understand the context of Nicolino's relationship with Rey. Indeed, the court explained its rationale, stating it does not usually like to make such inquiries but the "context" of the parties' relationships was an issue in the case (at least one of the incidents upon which Nicolino based her request for a restraining order occurred in her home). Moreover, the court did not indicate any of those factors influenced its decision to award Rey attorney fees. Though the court acknowledged Nicolino's ability to pay the fee award in the minute order ruling on the motions, a party's ability to pay fees is sometimes a factor a court is required to consider in awarding attorney fees. (E.g., Fam. Code, § 2030, subd. (a)(2).) Even if consideration of an ability to pay was improper in this case, we believe the record indicates it played at most a minor role in the fees determination such that there is no reasonable probability the fee award would have been different absent consideration of an ability to pay.

Third, Nicolino takes issue with certain statements the court made, contending they indicate the court incorrectly assumed Rey was an unsophisticated young woman who was a victim of Nicolino, and claims the court lost its temper at Nicolino during the motion hearing "unprovoked." As to the former, Nicolino's argument amounts to an attempt to litigate the accuracy of the court's impressions. We will not entertain that here, particularly where the court's determination on the merits

18

of the restraining order is not at issue.  As to the latter, having read the transcript of the hearing on these motions, we disagree with Nicolino's characterization of the court's reaction as "unprovoked."  Nicolino, not her attorney, interrupted the trial court twice while the court was explaining its concerns about her request to read a statement at the motion hearing and its ultimate determination that it would not hear the statement. While the court would have done better to maintain a more patient approach even in the face of repeated interruptions, our review of the record satisfies us that the court's comments reflect its view of the evidence, and do not indicate prejudice against Nicolino or partiality for Rey.

Turning to Nicolino's second argument, she contends the trial court abused its discretion by awarding Rey fees for time spent on three categories of work: (1) 7.35 hours opposing Nicolino's motion to seal; (2) 1.2 hours working with a specific attorney; and (3) approximately 1.75 hours working on potential settlements.  The problem with the latter two arguments is that Nicolino did not raise them in the trial court.  "It is well established that appellate courts will ordinarily not consider errors that 'could have been, but [were] not raised below.' [Citations.]  The rule applies to defenses as well as theories of liability, and to a 'new theory for or against recovery' of attorney fees."  (*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569.)  Because Nicolino did not assert those arguments below, we do not consider them on appeal.

Nicolino did, however, raise the issue of fees related to her motion to seal below.  Rey sought, and the trial court awarded, attorney fees pursuant to the civil harassment restraining order statute, Code of Civil Procedure section 527.6, subdivision (s),

19

which provides as follows: "The prevailing party in an action brought pursuant to this section may be awarded court costs and attorney's fees, if any." (Code Civ. Proc., § 527.6, subd. (s).) Nicolino argues fees for the time Rey's attorney spent addressing Nicolino's motion to seal are not authorized because Nicolino's motion to seal was not, itself, brought under Code of Civil Procedure section 527.6, but rather under Rules of Court rules 2.550 and 2.551.

Nicolino reads the statute too narrowly. By its plain language, subdivision (s) authorizes the award of attorney fees incurred "in an action" brought pursuant to Code of Civil Procedure section 527.6. Nicolino's motion to seal in this case was, naturally, brought in the same action she initiated under this statute. That the motion she filed was itself brought under a Rule of Court does not divorce the motion to seal from the "action" brought pursuant to Code of Civil Procedure section 527.6. The trial court was within its discretion to award fees for the work.

## DISPOSITION

The trial court's orders are affirmed.  Upon issuance of the remittitur, the materials filed in this court conditionally under seal are to be unsealed.  Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.

21